# GREEN *v.* BOCK LAUNDRY MACHINE CO.

No. 87–1816.   Argued January 18, 1989—Decided May 22, 1989

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and KENNEDY, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 527. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 530.

*Joseph M. Melillo* argued the cause for petitioner. With him on the briefs was *Neil J. Rovner*.

*Thomas D. Caldwell, Jr.*, argued the cause for respondent. With him on the brief was *Richard B. Swartz*.*

JUSTICE STEVENS delivered the opinion of the Court.

This case presents the question whether Rule 609(a)(1) of the Federal Rules of Evidence requires a judge to let a civil litigant impeach an adversary's credibility with evidence of the adversary's prior felony convictions. Because the Courts of Appeals have answered that question in different ways, we granted certiorari to resolve the conflict. 487 U. S. 1203 (1988).

---

*A brief of *amici curiae* urging affirmance was filed for the Commonwealth of Pennsylvania et al. by *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, *Gregory R. Neuhauser*, Senior Deputy Attorney General, and *John G. Knorr III*, Chief Deputy Attorney General, *Robert Butterworth*, Attorney General of Florida, *Linley E. Pearson*, Attorney General of Indiana, *Stephen E. Merrill*, Attorney General of New Hampshire, *Nicholas Spaeth*, Attorney General of North Dakota, *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *T. Travis Medlock*, Attorney General of South Carolina, *W. J. Michael Cody*, Attorney General of Tennessee, *Rosalie Simmonds Ballentine*, Solicitor General of the Virgin Islands, *Donald J. Hanaway*, Attorney General of Wisconsin, and *Joseph B. Meyer*, Attorney General of Wyoming.

While in custody at a county prison, petitioner Paul Green obtained work-release employment at a car wash. On his sixth day at work, Green reached inside a large dryer to try to stop it. A heavy rotating drum caught and tore off his right arm. Green brought this product liability action against respondent Bock Laundry Co. (Bock), manufacturer of the machine. At trial Green testified that he had been instructed inadequately concerning the machine's operation and dangerous character. Bock impeached Green's testimony by eliciting admissions that he had been convicted of conspiracy to commit burglary and burglary, both felonies. The jury returned a verdict for Bock. On appeal Green argued that the District Court had erred by denying his pretrial motion to exclude the impeaching evidence. The Court of Appeals summarily affirmed the District Court's ruling. 845 F. 2d 1011 (1988).

The Court of Appeals' disposition followed Circuit precedent established in *Diggs* v. *Lyons*, 741 F. 2d 577 (CA3 1984), cert. denied, 471 U. S. 1078 (1985). Writing for the panel majority, Judge Maris, who had headed the Advisory Committee that proposed a federal code of evidence to this Court,[1] concluded in *Diggs* that Rule 609 mandated admission for impeachment purposes of a civil plaintiff's prior felony convictions. He relied on the legislative history of Rule 609 as establishing that Congress intended Rule 609 to govern both criminal and civil proceedings. 741 F. 2d, at 581. He also concluded that a judge may not balance prejudice and probativeness pursuant to Rule 403[2] in order to circumvent Rule

---

[1] See Preliminary Draft of Proposed Rules of Evidence, 46 F. R. D. 161, 162 (1969).

[2] Federal Rule of Evidence 403 provides:

"Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

609(a)(2)'s requirement that all convictions pertaining to dishonesty—often called *crimen falsi* evidence—be admitted. *Ibid.* Rule 609's specific command, he wrote, forecloses judicial exercise of Rule 403 discretion to exclude evidence of felony convictions. *Id.*, at 582. The only situation in which Rule 609(a) allows the trial judge discretion to bar impeachment by prior felony convictions is when admission would unduly prejudice the defendant in a criminal case.[3] *Ibid.* Judge Maris concluded with this comment:

> "[T]he scope of Rule 609 has been and is the subject of widespread controversy and strongly held divergent views. We have felt compelled to give the rule the effect which the plain meaning of its language and the legislative history require. We recognize that the mandatory admission of all felony convictions on the issue of credibility may in some cases produce unjust and even bizarre results. Evidence that a witness has in the past been convicted of manslaughter by automobile, for example, can have but little relevance to his credibility as a witness in a totally different matter. But if the rule is to be amended to eliminate these possibilities of injustice, it must be done by those who have the authority to amend the rules, the Supreme Court and the Congress . . . . It is not for us as enforcers of the rule to amend it under the guise of construing it." *Ibid.*

Dissenting, Judge Gibbons acknowledged that "snippets of legislative history" show that four Members of Congress anticipated that a court might interpret Rule 609(a) to require impeachment of a witness by prior felony convictions irrelevant to the civil context. *Id.*, at 583. Yet he remained unpersuaded that Congress as a whole intended "so ridiculous a result." *Ibid.* Instead, he attributed the Rules' si-

---

[3] Although Rule 609(b) confers discretion upon the judge regarding the admission of convictions more than 10 years old, that factor was not present in *Diggs* or in this case.

lence regarding impeachment of civil plaintiffs to "legislative oversight." *Ibid.* And he noted that other Circuits had concluded, contrary to the panel majority, "that the mandatory admission feature of prior *crimen falsi* convictions does not apply to the admissibility of prior felony convictions in civil cases." *Ibid.* Placing the use of prior felony conviction evidence outside the reach of the judge's discretion, he declared, "makes no sense whatever." *Ibid.*

Both the majority and dissenting opinions in *Diggs* convey dissatisfaction with automatic admissibility of prior felony convictions to impeach civil witnesses, especially civil plaintiffs. Indeed, criticism of this result is longstanding and widespread.[4] Our task in deciding this case, however, is not to fashion the rule we deem desirable but to identify the rule that Congress fashioned. We begin by considering the extent to which the text of Rule 609 answers the question before us. Concluding that the text is ambiguous with respect

---

[4] More than a century ago, Oliver Wendell Holmes, Jr., then a Justice on the Supreme Judicial Court of Massachusetts, wrote in a civil case:

"[W]hen it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in the particular case, and thence that he, has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of bad character and unworthy of credit." *Gertz* v. *Fitchburg Railroad Co.*, 137 Mass. 77, 78 (1884).

Questions about the relevancy and fairness of such evidence did not abate, see n. 11, *infra*, and persisted even after enactment in 1975 of the Federal Rules of Evidence. *E. g.*, *Shows* v. *M/V Red Eagle*, 695 F. 2d 114, 118 (CA5 1983); 10 J. Moore & H. Bendix, Moore's Federal Practice § 609.02, pp. VI–134 to VI–135 (2d ed. 1988) (hereinafter Moore); 3 D. Louisell & C. Mueller, Federal Evidence § 315, pp. 316–319 (1979) (hereinafter Louisell); Foster, Rule 609(a) in the Civil Context: A Recommendation for Reform, 57 Ford. L. Rev. 1 (1988); Note, Prior Convictions Offered for Impeachment in Civil Trials: The Interaction of Federal Rules of Evidence 609(a) and 403, 54 Ford. L. Rev. 1063 (1986).

to civil cases, we then seek guidance from legislative history and from the Rules' overall structure.

## I

Federal Rule of Evidence 609(a) provides:

> "General Rule.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

By its terms the Rule requires a judge to allow impeachment of any witness with prior convictions for felonies not involving dishonesty "only if" the probativeness of the evidence is greater than its prejudice "to the defendant."[5]  *Ibid.*  It follows that impeaching evidence detrimental to the prosecution in a criminal case "shall be admitted" without any such balancing.  *Ibid.*

The Rule's plain language commands weighing of prejudice to a defendant in a civil trial as well as in a criminal trial. But that literal reading would compel an odd result in a case like this.  Assuming that all impeaching evidence has at least minimal probative value, and given that the evidence of plaintiff Green's convictions had some prejudicial effect on his case—but surely none on defendant Bock's—balancing according to the strict language of Rule 609(a)(1) inevitably

---

[5] Thus the text of the Rule limits impeachment of not only a criminal defendant, but also any witness offered on the defendant's behalf.  Cf. S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 364–365 (3d ed. 1982) (hereinafter Saltzburg) (suggesting Congress may not have intended this result).

leads to the conclusion that the evidence was admissible. In fact, under this construction of the Rule, impeachment detrimental to a civil plaintiff always would have to be admitted.

No matter how plain the text of the Rule may be, we cannot accept an interpretation that would deny a civil plaintiff the same right to impeach an adversary's testimony that it grants to a civil defendant.[6] The Sixth Amendment to the Constitution guarantees a criminal defendant certain fair trial rights not enjoyed by the prosecution, while the Fifth Amendment lets the accused choose not to testify at trial. In contrast, civil litigants in federal court share equally the protections of the Fifth Amendment's Due Process Clause. Given liberal federal discovery rules, the inapplicability of the Fifth Amendment's protection against self-incrimination, and the need to prove their case, civil litigants almost always must testify in depositions or at trial. Denomination as a civil defendant or plaintiff, moreover, is often happenstance based on which party filed first or on the nature of the suit.[7] Evidence that a litigant or his witness is a convicted felon tends to shift a jury's focus from the worthiness of the litigant's position to the moral worth of the litigant himself.[8] It is unfathomable why a civil plaintiff—but not a civil defend-

---

[6] Courts considering admissibility of impeachment harmful to a civil *defendant* occasionally have allowed balancing without questioning Rule 609(a)'s asymmetry when applied to the civil context. *E. g.*, *Murr* v. *Stinson*, 752 F. 2d 233 (CA6 1985) *(per curiam); Calhoun* v. *Baylor*, 646 F. 2d 1158 (CA6 1981).

[7] Cf. *Campbell* v. *Greer*, 831 F. 2d 700, 703 (CA7 1987). Declaratory judgment and interpleader actions, for instance, may invert expected designations of plaintiff and defendant. See 28 U. S. C. § 2201 (1982 ed., Supp. V); Fed. Rule Civ. Proc. 22.

[8] See *Shows*, 695 F. 2d, at 118 (prior felony impeachment of plaintiff alleging injuries because of employer's negligence "presented the risk that a jury would not be fair to Shows' claim, not because it did not believe him, but because as a convict he was not deserving of their justice"). See also Foster, 57 Ford. L. Rev., at 5, 21–22; Note, 54 Ford. L. Rev., at 1067.

ant — should be subjected to this risk. Thus we agree with the Seventh Circuit that as far as civil trials are concerned, Rule 609(a)(1) "can't mean what it says."[9] *Campbell* v. *Greer*, 831 F. 2d 700, 703 (1987).

Out of this agreement flow divergent courses, each turning on the meaning of "defendant." The word might be interpreted to encompass all witnesses, civil and criminal, parties or not. See *Green* v. *Shearson Lehman/American Express, Inc.*, 625 F. Supp. 382, 383 (ED Pa. 1985) (dictum). It might be read to connote any party offering a witness, in which event Rule 609(a)(1)'s balance would apply to civil, as well as criminal, cases. *E. g., Howard* v. *Gonzales*, 658 F. 2d 352 (CA5 1981). Finally, "defendant" may refer only to the defendant in a criminal case. See, *e. g., Campbell*, 831 F. 2d, at 703. These choices spawn a corollary question: must a judge allow prior felony impeachment of all civil witnesses as well as all criminal prosecution witnesses, or is Rule 609(a)(1) inapplicable to civil cases, in which event Rule 403 would authorize a judge to balance in such cases? Because the plain text does not resolve these issues, we must examine the history leading to enactment of Rule 609 as law.

## II

At common law a person who had been convicted of a felony was not competent to testify as a witness. "[T]he disqualification arose as part of the punishment for the crime, only later being rationalized on the basis that such a person was unworthy of belief." 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[02], p. 609–58 (1988) (citing 2 J. Wigmore, Evidence § 519 (3d ed. 1940)). As the law evolved, this absolute bar gradually was replaced by a rule that al-

---

[9] Accord, Moore § 609.14[4], at VI–148 ("[S]ubsection (a)(1) is deficient, in that it cannot be sensibly applied in civil cases"); Louisell § 316, at 324, n. 26 ("It would be incongruous to read the provision as allowing exclusion of convictions of defendants in civil cases, since no reason appears to distinguish among the parties in civil litigation").

lowed such witnesses to testify in both civil and criminal cases, but also to be impeached by evidence of a prior felony conviction or a *crimen falsi* misdemeanor conviction.[10] In the face of scholarly criticism of automatic admission of such impeaching evidence, some courts moved toward a more flexible approach.[11]

---

[10] See, *e. g.*, Moore § 609.02, at VI–134; E. Cleary, McCormick on Evidence § 43, p. 93 (3d ed. 1984) (hereinafter Cleary).

While a Court of Appeals Judge, William Howard Taft, having determined that both common law and an Ohio statute permitted prior felonies impeachment in criminal cases, stated: "It is difficult to see any reason why the legislature should permit the credibility of a witness in a criminal case to be attacked by proof of former conviction, but should withhold such permission in civil cases." *Baltimore & O. R. Co.* v. *Rambo*, 59 F. 75, 79 (CA6 1893). He concluded that evidence that a civil defendant's witness had been convicted of burglary could be admitted as impeachment, though not in the plaintiff's case in chief. See also *Wounick* v. *Hysmith*, 423 F. 2d 873 (CA3 1970) (Circuit precedent permitted admission of all *crimen falsi* convictions); *Oklahoma ex rel. Nesbitt* v. *Allied Materials Corp.*, 312 F. Supp. 130, 133 (WD Okla. 1968); *Taylor* v. *Atchison, T. & S. F. R. Co.*, 33 F. R. D. 283, 285 (WD Mo. 1962).

[11] In a seminal article, Dean Ladd questioned the traditional rule's "premise, that the doing of an act designated by organized society as a crime is itself an indication of testimonial unreliability," and advocated barring impeachment by evidence of convictions bearing no relation to a witness' truthfulness. Ladd, Credibility Tests—Current Trends, 89 U. Pa. L. Rev. 166, 176, 191 (1940). See also McGowan, Impeachment of Criminal Defendants by Prior Conviction, 1970 Law & Social Order 1 (hereafter McGowan); Comments following A. L. I., Model Code of Evidence, Rule 106, pp. 128–129 (1942).

Among those who seemed to strain against the conventional rule was Judge Learned Hand, who, in allowing impeachment of a civil antitrust defendant by evidence of a *nolo contendere* plea, wrote:

"[S]o far as we can see, the greater number of jurisdictions allow the conviction as evidence to impeach a witness. Where there is a doubt as to the competency of evidence, Federal Rules of Civil Procedure, rule 43(a) . . . admonishes us to admit it rather than to exclude it; and for that reason we think it should have been here admitted. In all such cases there is of course the danger that the jury will use the plea as an admission of the 'operative' facts; but that is equally true of a conviction on a plea of guilty or on a verdict. Whether the attempt is ever practicable to limit its use to the witness's credibility, and whether, if not, its use is an injustice, are not

In 1942, the American Law Institute proposed a rule that would have given the trial judge discretion in all cases[12] to exclude evidence of prior convictions of any witness if "its probative value is outweighed by the risk that its admission will . . . create substantial danger of undue prejudice . . . ."[13] Model Code of Evidence, Rule 303 (1942); see Rule 106. No such evidence could be admitted against a witness-accused unless he first introduced "evidence for the sole purpose of supporting his credibility." Rule 106(3).

A decade later the American Bar Association endorsed a rule that further limited impairment of any witness' credibility to convictions for crimes "involving dishonesty or false statement." National Conference of Commissioners, Uniform Rules of Evidence, Rule 21 (1953). As with Model Rule 106, this evidence would not be admitted against a witness-accused unless he adduced evidence supporting his credibility. *Ibid.* This code too afforded the judge discretion to exclude impeaching evidence in both criminal and civil trials if on balance he deemed it too prejudicial. See Rules 2, 45.

The only contemporaneous congressional enactment governing impeachment by prior convictions stated:

> "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or evidence aliunde . . . ." D. C. Code Ann. § 14–305 (1961).

---

open questions for us." *Pfotzer* v. *Aqua Systems, Inc.*, 162 F. 2d 779, 785 (CA2 1947).

See also *Pasternak* v. *Pan American Petroleum Corp.*, 417 F. 2d 1292 (CA10 1969) (exercising discretion despite contrary state rule); *Ruffalo's Trucking Service, Inc.* v. *National Ben-Franklin Insurance Co. of Pittsburgh*, 243 F. 2d 949 (CA2 1957) (holding state law permits discretion).

[12] Model Code of Evidence, Rule 2 (1942).

[14] This blending of Rules 106 and 303 is justified by the latter Rule's provision that "[a]ll Rules stating evidence to be admissible are subject to this Rule unless the contrary is expressly stated." See Rule 303(2).

This provision of the District of Columbia Code traditionally had been interpreted to require the admission of prior conviction evidence. McGowan, 1970 Law & Social Order 1. But in reviewing a defendant's challenge to admission of a grand larceny conviction to impeach his testimony at his trial on housebreaking and larceny charges, the Court of Appeals for the District of Columbia Circuit noted that the Rule said conviction evidence "may," not "shall," be admitted; therefore, a judge was not required to allow such impeachment. *Luck* v. *United States*, 121 U. S. App. D. C. 151, 156, 348 F. 2d 763, 768 (1965). In effect, the court conditioned admissibility on the kind of judicial balancing expressly provided in the Uniform Rules and Model Code.[14] *Id.*, at 156, n. 8, 348 F. 2d, at 768, n. 8. Far from welcoming this innovation, the Federal Department of Justice in 1969 proposed changing the code to overrule *Luck*, and in 1970 Congress amended the District of Columbia Code to provide that both prior felony and *crimen falsi* impeaching evidence "shall be admitted."[15]

---

[14] Writing for the Court of Appeals' panel, Judge McGowan explained:
"The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing *[sic]* that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field." *Luck* v. *United States*, 121 U. S. App. D. C. 151, 156, 348 F. 2d 763, 768 (1965) (emphasis in original) (footnote omitted).

[15] Section 133(b) of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. 91–358, 84 Stat. 551, D. C. Code Ann. § 14–305(b) (1967 ed., Supp. IV 1971), provided in part that
"for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if

Amid controversy over *Luck*, a distinguished Advisory Committee appointed at the recommendation of the Judicial Conference of the United States submitted in March 1969 the first draft of evidence rules to be used in all federal civil and criminal proceedings.[16] Rule 6–09, forerunner of Federal Rule of Evidence 609, allowed all *crimen falsi* and felony convictions evidence without mention of judicial discretion.[17] The Committee reasoned that "[d]angers of unfair prejudice, confusion of issues, misleading the jury, waste of time, and surprise" inherent in the admission of evidence of witness misconduct "tend to disappear or diminish" when the evidence is based on a conviction. Preliminary Draft of Proposed Rules of Evidence, Advisory Committee's Note, 46 F. R. D. 161, 297 (1969). Having considered five options — including the *Luck* doctrine — for further reducing risks to a witness-accused, the Committee found none acceptable, and so proposed a rule that "adheres to the traditional practice of allowing the witness-accused to be impeached by evidence of conviction of crime, like other witnesses." *Id.*, at 299.

Nonetheless, the Advisory Committee embraced the *Luck* doctrine in its second draft. Issued in March 1971, this version of Rule 609(a) authorized the judge to exclude either felony or *crimen falsi* evidence upon determination that its probative value was "substantially outweighed by the danger

---

offered, . . . but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment)."

[16] Preliminary Draft of Proposed Rules of Evidence, 46 F. R. D. 161 (1969); see Rule 11–01(b), *id.*, at 417.

[17] The first draft provided:

"(a) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment." *Id.*, at 295–296.

of unfair prejudice."[18]    Revised Draft of Proposed Rules of Evidence, 51 F. R. D. 315, 391 (1971).    The Committee specified that its primary concern was prejudice to the witness-accused; the "risk of unfair prejudice to a party in the use of [convictions] to impeach the ordinary witness is so minimal as scarcely to be a subject of comment."    Advisory Committee's Note, *id.*, at 392.    Yet the text of the proposal was broad enough to allow a judge to protect not only criminal defendants, but also civil litigants and nonparty witnesses, from unfair prejudice.    Cf. *ibid.* (safeguards in Rule 609(b), (c), (d) apply to all witnesses).

As had *Luck*'s interpretation of the District of Columbia Code, the Advisory Committee's revision of Rule 609(a) met resistance.    The Department of Justice urged that the Committee supplant its proposal with the strict, amended version of the District Code.    Moore § 609.01[1.—7], p. VI–111. Senator McClellan objected to the adoption of the *Luck* doctrine and urged reinstatement of the earlier draft.[19]

The Advisory Committee backed off.    As Senator McClellan had requested, it submitted as its third and final draft the same strict version it had proposed in March 1969.    Rules of

---

[18] The second draft of Rule 609(a) provided:

"General Rule.  For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement regardless of the punishment, unless (3) *in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.*"  Revised Draft of Proposed Rules of Evidence, 51 F. R. D. 315, 391 (1971) (emphasis supplied).

[19] "If the 1970 Crime Act is to be overturned," McClellan wrote in a letter to Judge Maris, the Advisory Committee's chairman, "I suggest that this is a question for the Congress to decide."  Supplement to Hearings on the Proposed Rules of Evidence before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 93d Cong., 1st Sess., p. 54 (1973).

Evidence, 56 F. R. D. 183, 269–270 (1973). The Committee's Note explained:

> "The weight of traditional authority has been to allow use of felonies generally, without regard to the nature of the particular offense, and of *crimen falsi* without regard to the grade of the offense. This is the view accepted by Congress in the 1970 amendment of § 14–305 of the District of Columbia Code . . . . Whatever may be the merits of [other] views, this rule is drafted to accord with the Congressional policy manifested in the 1970 legislation." *Id.*, at 270.

This Court forwarded the Advisory Committee's final draft to Congress on November 20, 1972.

The House of Representatives did not accept the Advisory Committee's final proposal. A Subcommittee of the Judiciary Committee recommended an amended version similar to the text of the present Rule 609(a), except that it avoided the current Rule's ambiguous reference to prejudice to "the defendant." Rather, in prescribing weighing of admissibility of prior felony convictions, it used the same open-ended reference to "unfair prejudice" found in the Advisory Committee's second draft.[20]

The House Judiciary Committee departed even further from the Advisory Committee's final recommendation, preparing a draft that did not allow impeachment by evidence of prior conviction unless the crime involved dishonesty or false

---

[20] The formulation of the Special Subcommittee on Reform of Federal Criminal Laws of the House Judiciary Committee provided:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible only if the crime (1) was punishable by death or imprisonment in excess of one year, unless the Court determines that the danger of unfair prejudice outweighs the probative value of the evidence of the conviction, or (2) involved dishonesty or false statement." H. R. Rep. No. 93–650, p. 11 (1973).

Compare *ibid.*, with Federal Rule of Evidence 609(a) and Proposed Rule of Evidence 609(a), 51 F. R. D., at 391.

statement.[21]   Motivating the change were concerns about the deterrent effect upon an accused who might wish to testify and the danger of unfair prejudice, "even upon a witness who was not the accused," from allowing impeachment by prior felony convictions regardless of their relation to the witness' veracity.   H. R. Rep. No. 93–650, p. 11 (1973).   Although the Committee Report focused on criminal defendants and did not mention civil litigants, its express concerns encompassed all nonaccused witnesses.

Representatives who advocated the automatic admissibility approach of the Advisory Committee's draft and those who favored the intermediate approach proposed by the Subcommittee both opposed the Committee's bill on the House floor.   Four Members pointed out that the Rule applied in civil, as well as criminal, cases.[22]   The House voted to adopt the Rule as proposed by its Judiciary Committee.

---

[21] The version sent to the full House by the Judiciary Committee simply provided:

"(a) General Rule. — For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible only if the crime involved dishonesty or false statement."   120 Cong. Rec. 2374 (1974).

[22] Seeking to substitute the Advisory Committee's final draft for the House Judiciary Committee version, Representative Hogan declared that his "amendment would benefit parties on all sides of litigation—the civil plaintiffs and civil defendants, the Government in prosecutions and the criminal defendant."   120 Cong. Rec. 2376 (1974).

Representative Dennis, defending the version that he had shepherded through the House Judiciary Committee and onto the House floor, maintained that it too

"does not apply only to a man who is a defendant in a criminal case, but it applies to any witness.   Under the rule that the gentleman has in his amendment, if 20 years ago you were guilty of some misdemeanor and were called in as a witness in a civil case, then they could ask you about it, although that case had nothing to do with the case on trial before you." *Id.*, at 2377.

"The difficulty here," Representative Wiggins foresaw, "is we are dealing with a complex problem and are trying to fashion a single rule adequate to take care of the problem . . . . [F]urther draftsmanship is necessary to

The Senate Judiciary Committee proposed an intermediate path. For criminal defendants, it would have allowed impeachment only by *crimen falsi* evidence; for other witnesses, it also would have permitted prior felony evidence only if the trial judge found that probative value outweighed "prejudicial effect against the party offering that witness."[23] This language thus required the exercise of discretion before prior felony convictions could be admitted in civil litigation. But the full Senate, prodded by Senator McClellan, reverted to the version that the Advisory Committee had submitted. See 120 Cong. Rec. 37076, 37083 (1974).

Conflict between the House bill, allowing impeachment only by *crimen falsi* evidence, and the Senate bill, embodying the Advisory Committee's automatic admissibility approach, was resolved by a Conference Committee.[24] The

---

spin off criminal cases from civil cases, to separate the nonparty witness problem from the party witness problem. As we deal with the total problem under a single rule, we create all this uncertainty and the possibility of inequity . . . ." *Id.*, at 2379.

Supporting Representative Hogan's rule of admissibility for all felonies, Representative Lott commented:

"[I]t is essential to recognize that this is a rule that would have application in both civil and criminal cases, and which would apply not only to witnesses for the defense, but witnesses for the plaintiff or the prosecution as well. . . . [A] jury is entitled to all the evidence bearing on the witness's tendency to tell the truth." *Id.*, at 2381.

[23] S. Rep. No. 93-1277, p. 14 (1974). The Senate Judiciary Committee's actual draft was even less specific on this point, stating:

"(a) General Rule. —For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime may be elicited from him or established by public record during cross-examination but only if the crime (1) involved dishonesty or false statement or (2) in the case of witnesses other than the accused, was punishable by death or imprisonment in excess of one year under the law under which he was convicted, but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." 120 Cong. Rec. 37076 (1974).

[24] Cf. 120 Cong. Rec. 40894 (1974) (remarks of Rep. Dennis) ("[I]n conference, we came up with a compromise which does not suit me 100 per-

conferees' compromise—enacted as Federal Rule of Evidence 609(a)(1)—authorizes impeachment by felony convictions, "but only if" the court determines that probative value outweighs "prejudicial effect to the defendant." The Conference Committee's Report makes it perfectly clear that the balance set forth in this draft, unlike the second Advisory Committee and the Senate Judiciary Committee versions, does not protect all nonparty witnesses:

> "The danger of prejudice to a witness other than the defendant (such as injury to the witness' reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible." H. R. Conf. Rep. No. 93–1597, pp. 9–10 (1974).

Accord, *Linskey* v. *Hecker*, 753 F. 2d 199, 201 (CA1 1985). Equally clear is the conferees' intention that the rule shield the accused, but not the prosecution,[25] in a criminal case. Impeachment by convictions, the Committee Report stated, "should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record." H. R. Conf. Rep. No. 93–1597, *supra*, at 10.

But this emphasis on the criminal context, in the Report's use of terms such as "defendant" and "to convict" and in in-

---

cent, but which is a slight advance over the present law. It is the best we thought we could do . . .").

[25] As one Conference Committee Member explained:

"[N]ow a defendant can cross examine a government witness about any of his previous felony convictions; he can always do it, because that will not prejudice him in anyway. . . . Only the government is going to be limited . . . ." *Ibid.* (remarks of Rep. Dennis).

See also Cleary § 43, at 94; Louisell § 316, at 325.

dividual conferees' explanations of the compromise,[26] raises some doubt over the Rule's pertinence to civil litigants. The discussions suggest that only two kinds of witnesses risk prejudice—the defendant who elects to testify in a criminal case and witnesses other than the defendant in the same kind of case. Nowhere is it acknowledged that undue prejudice to a civil litigant also may improperly influence a trial's outcome. Although this omission lends support to Judge Gibbons' opinion that "legislative oversight" caused exclusion of civil parties from Rule 609(a)(1)'s balance, see *Diggs*, 741 F. 2d, at 583, a number of considerations persuade us that the Rule was meant to authorize a judge to weigh prejudice against no one other than a criminal defendant.

A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change. Cf. *Midlantic National Bank* v. *New Jersey Department of Environmental Protection*, 474 U. S. 494, 502 (1986). The weight of authority before Rule 609's adoption accorded with the Advisory Committee's final draft, admitting all felonies without exercise of judicial discretion in

---

[26] Representative Dennis, who had stressed in earlier debates that the Rule would apply to both civil and criminal cases, see 120 Cong. Rec. 2377 (1974), explained the benefits of the Rule for criminal defendants and made no reference to benefits for civil litigants when he said:

"[Y]ou can ask about all . . . felonies on cross examination, only if you can convince the court, and the burden is on the *government*, which is an important change in the law, that the probative value of the question is greater than the damage to the *defendant;* and that is damage or prejudice *to the defendant alone.*" *Id.*, at 40894 (emphases supplied).

In the same debate Representative Hogan manifested awareness of the Rule's broad application. While supporting the compromise, he reiterated his preference for a rule

"that, for the purpose of attacking the credibility of a witness, *even if the witness happens to be the defendant in a criminal case*, evidence that he has been convicted of a crime is admissible and may be used to challenge that witness' credibility if the crime is a felony or is a misdemeanor involving dishonesty of [sic] false statement." *Id.*, at 40895 (emphasis added).

either civil or criminal cases. Departures from this general rule had occurred overtly by judicial interpretation, as in *Luck* v. *United States*, 121 U. S. App. D. C. 151, 348 F. 2d 763 (1965), or in evidence codes, such as the Model Code and the Uniform Rules. Rule 609 itself explicitly adds safeguards circumscribing the common-law rule. See Advisory Committee's Note, 56 F. R. D., at 270–271. The unsubstantiated assumption that legislative oversight produced Rule 609(a)(1)'s ambiguity respecting civil trials hardly demonstrates that Congress intended silently to overhaul the law of impeachment in the civil context. Cf. *NLRB* v. *Plasterers*, 404 U. S. 116, 129–130 (1971).

To the extent various drafts of Rule 609 distinguished civil and criminal cases, moreover, they did so only to mitigate prejudice to criminal defendants. Any prejudice that convictions impeachment might cause witnesses other than the accused was deemed "so minimal as scarcely to be a subject of comment." Advisory Committee's Note, 51 F. R. D., at 392. Far from voicing concern lest such impeachment unjustly diminish a civil witness in the eyes of the jury, Representative Hogan declared that this evidence ought to be used to measure a witness' moral value.[27] Furthermore, Representative Dennis—who in advocating a Rule limiting

---

[27] "Suppose some governmental body instituted a civil action for damages, and the defendant called a witness who had been previously convicted of malicious destruction of public property. Under the committee's formulation, the convictions could not be used to impeach the witness' credibility since the crimes did not involve dishonesty or false statement. Yet, in the hypothetical case, as in any case in which the government was a party, justice would seem to me to require that the jury know that the witness had been carrying on some private war against society. Should a witness with an antisocial background be allowed to stand on the same basis of believability before juries as law-abiding citizens with unblemished records? I think not.

. . . . .

"Personally I am more concerned about the moral worth of individuals capable of engaging in such outrageous acts as adversely reflecting on a witness' character than I am of thieves . . . ." *Id.*, at 2376.

impeachment to *crimen falsi* convictions had recognized the impeachment Rule's applicability to civil trials—not only debated the issue on the House floor, but also took part in the conference out of which Rule 609 emerged. See 120 Cong. Rec. 2377–2380, 39942, 40894–40895 (1974). These factors indicate that Rule 609(a)(1)'s textual limitation of the prejudice balance to criminal defendants resulted from deliberation, not oversight.[28]

Had the conferees desired to protect other parties or witnesses, they could have done so easily. Presumably they had access to all of Rule 609's precursors, particularly the drafts prepared by the House Subcommittee and the Senate Judiciary Committee, both of which protected the civil litigant as well as the criminal defendant. Alternatively, the conferees could have amended their own draft to include other parties.[29] They did not for the simple reason that they

---

[28] Cf. Foster, 57 Ford. L. Rev., at 8 ("[T]his rule emerged in its present form as a deliberate, yet uneasy compromise between opposing positions in a sharply-divided Congress").

[29] For example, the current Uniform Rule of Evidence 609(a)(1), promulgated in 1974, simply inserted "to a party or the witness" in place of "to the defendant" in Federal Rule of Evidence 609(a)(1). See also Louisell § 314, at 310–315; *id.*, at 147–156 (Supp. 1988) (detailing States' revisions of Federal Rule of Evidence 609).

Recently, two Advisory Committees proposed versions of Rule 609(a)(1) that expressly protect all witnesses. The preliminary draft of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States provides that a witness other than a criminal defendant may be impeached by a conviction for a felony unrelated to truthfulness only after balancing according to Federal Rule of Evidence 403. Proposed Amendments to the Federal Rules of Appellate Procedure, Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Federal Rules of Bankruptcy Procedure, and the Federal Rules of Evidence. Meanwhile, the Committee on Rules of Criminal Procedure and Evidence of the American Bar Association's Criminal Justice Section recommends deleting "to the defendant" from Rule 609(a)(1), thus requiring courts simply to "determin[e] that the probative value of admitting this evidence outweighs its prejudicial effect." Federal Rules of Evidence: A Fresh Review and Evaluation 56 (1987).

intended that only the accused in a criminal case should be protected from unfair prejudice by the balance set out in Rule 609(a)(1).

## III

That conclusion does not end our inquiry. We next must decide whether Rule 609(a)(1) governs all prior felonies impeachment, so that no discretion may be exercised to benefit civil parties, or whether Rule 609(a)(1)'s specific reference to the criminal defendant leaves Rule 403 balancing available in the civil context.

Several courts, often with scant analysis of the interrelation between Rule 403 and Rule 609(a)(1), have turned to Rule 403 to weigh prejudice and probativeness of impeaching testimony in civil cases.[30] Judge Gibbons, dissenting in *Diggs,* 741 F. 2d, at 583, labeled this a "sensible approach." Indeed it may be. Prodigious scholarship highlighting the irrationality and unfairness of impeaching credibility with evidence of felonies unrelated to veracity indicates that judicial exercise of discretion is in order. If Congress intended otherwise, however, judges must adhere to its decision.

A general statutory rule usually does not govern unless there is no more specific rule. See *D. Ginsberg & Sons, Inc.* v. *Popkin,* 285 U. S. 204, 208 (1932). Rule 403, the more general provision, thus comes into play only if Rule 609, though specific regarding criminal defendants, does not pertain to civil witnesses. See Advisory Committee's Note to Proposed Rule 403, 56 F. R. D., at 218. The legislative his-

---

[30] The most extensive discussion reaching this result occurs in *Donald* v. *Wilson,* 847 F. 2d 1191 (CA6 1988). More frequently, courts employ Rule 403 without resolving the applicability of Rule 609(a)(1), as in *Jones* v. *Board of Police Comm'rs,* 844 F. 2d 500 (CA8 1988), cert. pending, No. 88-5468; *Abshire* v. *Walls,* 830 F. 2d 1277 (CA4 1987); *Radtke* v. *Cessna Aircraft Co.,* 707 F. 2d 999 (CA8 1983); *Czajka* v. *Hickman,* 703 F. 2d 317 (CA8 1983); and *Shows* v. *M/V Red Eagle,* 695 F. 2d 114 (CA5 1983). Accord, *Hannah* v. *Overland,* 795 F. 2d 1385 (CA8 1986) (applying Rule 403 without mentioning Rule 609(a)(1)); *Wierstak* v. *Heffernan,* 789 F. 2d 968 (CA1 1986) (same).

tory evinces some confusion about Rule 403's applicability to a version of Rule 609 that included no balancing language.[31] That confusion is not an obstacle because the structure of the Rules as enacted resolves the question.

Rule 609(a) states that impeaching convictions evidence "shall be admitted."[32]  With regard to subpart (2), which governs impeachment by *crimen falsi* convictions, it is widely

---

[31] Illustrative is this colloquy during the testimony before the House Subcommittee of Henry J. Friendly, then Chief Judge of the Second Circuit:

"Judge FRIENDLY. . . . [O]f course, there is the overriding rule that the judge can always exclude testimony where probative value he thinks is outweighed by its prejudicial effect and perhaps in the case we are discussing he should do that.

"Mr. HUNGATE. Would that be true with or without the rules?

"Judge FRIENDLY. That is true today.

"Mr. HUNGATE. Would it remain true if these rules became effective?

"Judge FRIENDLY. I assume they have such a rule in here. . I could easily check.

"Mr. DENNIS. It seems to me if he has to follow this rule he does not have much discretion.  Maybe he still could rule something out.  I am not sure.

.          .          .          .          .

"Mr. HUNGATE. I believe section 403 is the rule to which you are referring. . . .

"Judge FRIENDLY. I think . . . Congressman [Dennis'] point is a good one.  You have the problem: Does that apply when there is a specific rule on the subject?  This just says relevant evidence may be excluded if it has this effect.  But then somebody is going to argue, this other rule dealt very specifically with the question and rule 403 is out.  I don't know what the answer would be."  Hearings on Proposed Rules of Evidence before the Special Subcommittee on Reform of Federal Criminal Laws of the House Committee on the Judiciary, 93d Cong., 1st Sess., pp. 251–252 (1973).

See also 120 Cong. Rec. 2381 (1974) (remarks of Rep. Lott) (suggesting that if automatic admissibility rule were adopted, Rule 403 balancing would be available).  Cf. *Campbell*, 831 F. 2d, at 705.

[32] The process by which Congress changed the District of Columbia Code to provide that impeaching evidence "shall," not "may," be admitted, see *supra*, at 514, makes it evident that this mandatory language was intended.  Contra, Saltzburg 366.

agreed that this imperative, coupled with the absence of any balancing language, bars exercise of judicial discretion pursuant to Rule 403.[33]  Subpart (1), concerning felonies, is subject to the same mandatory language; accordingly, Rule 403 balancing should not pertain to this subsection either.[34]

Any argument that Rule 403 overrides Rule 609 loses force when one considers that the Rule contains its own weighing language, not only in subsection (a)(1), but also in sections (b), pertaining to older convictions, and (d), to juvenile adjudications.  These latter balances, like Rule 609 in general, apply to both civil and criminal witnesses.  See Fed. Rule Evid. 1101(b).  Earlier drafts of subsection (a)(1) also contained balancing provisions that comprehended both types of witnesses; these, as we have shown, deliberately were eliminated by advocates of an automatic admissibility rule.  The absence of balances within only two aspects of the Rule— *crimen falsi* convictions and felony convictions of witnesses other than those whose impeachment would prejudice a criminal defendant—must be given its proper effect.  Thus Rule 609(a)(1)'s exclusion of civil witnesses from its weighing language is a specific command that impeachment of such witnesses be admitted, which overrides a judge's general discretionary authority under Rule 403.  Courts relying on Rule 403 to balance probative value against prejudice to civil witnesses depart from the mandatory language of Rule 609.[35]

---

[33] *E. g., United States* v. *Kuecker*, 740 F. 2d 496 (CA7 1984); *United States* v. *Wong*, 703 F. 2d 65 (CA3) *(per curiam)*, cert. denied, 464 U. S. 842 (1983); Cleary § 43, at 95; 2 C. Wright, Federal Practice and Procedure § 416, p. 554 (1982); Saltzburg 366.

[34] See Foster, 57 Ford. L. Rev., at 15 ("It strains logic to view Rule 403 as modifying one subsection of a specific rule containing its own balancing proviso, but not as modifying the other subsection, where neither the rule nor its legislative history reveals any intent to invoke Rule 403's residual discretion"); see also *Campbell*, 831 F. 2d, at 705.

[35] Accord, *id.*, at 706 ("[W]here, as in Rule 609(a), Congress has taken pains to specify the conditions for both the admission and the exclusion of a

In summary, we hold that Federal Rule of Evidence 609(a)(1) requires a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony. Thus no error occurred when the jury in this product liability suit learned through impeaching cross-examination that plaintiff Green was a convicted felon. The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE SCALIA, concurring in the judgment.

We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional, result. Our task is to give some alternative meaning to the word "defendant" in Federal Rule of Evidence 609(a)(1) that avoids this consequence; and then to determine whether Rule 609(a)(1) excludes the operation of Federal Rule of Evidence 403.

I think it entirely appropriate to consult all public materials, including the background of Rule 609(a)(1) and the legislative history of its adoption, to verify that what seems to us an unthinkable disposition (civil defendants but not civil plaintiffs receive the benefit of weighing prejudice) was indeed unthought of, and thus to justify a departure from the ordinary meaning of the word "defendant" in the Rule. For that purpose, however, it would suffice to observe that counsel have not provided, nor have we discovered, a shred of evidence that anyone has ever proposed or assumed such a bizarre disposition. The Court's opinion, however, goes well beyond this. Approximately four-fifths of its substantive analysis is devoted to examining the evolution of Federal Rule of Evidence 609, from the 1942 Model Code of Evidence, to the 1953 Uniform Rules of Evidence, to the 1965 *Luck* case and the 1970 statute overruling it, to the Subcommittee,

---

specific class of evidence (convictions), district courts may not use Rule 403 to set that specification at naught").

Committee, and Conference Committee Reports, and to the so-called floor debates on Rule 609—all with the evident purpose, not merely of confirming that the word "defendant" cannot have been meant literally, but of determining what, precisely, the Rule does mean.

I find no reason to believe that any more than a handful of the Members of Congress who enacted Rule 609 were aware of its interesting evolution from the 1942 Model Code; or that any more than a handful of them (if any) voted, with respect to their understanding of the word "defendant" and the relationship between Rule 609 and Rule 403, on the basis of the referenced statements in the Subcommittee, Committee, or Conference Committee Reports, or floor debates—statements so marginally relevant, to such minute details, in such relatively inconsequential legislation. The meaning of terms on the statute books ought to be determined, not on the basis of which meaning can be shown to have been understood by a larger handful of the Members of Congress; but rather on the basis of which meaning is (1) most in accord with context and ordinary usage, and thus most likely to have been understood by the *whole* Congress which voted on the words of the statute (not to mention the citizens subject to it), and (2) most compatible with the surrounding body of law into which the provision must be integrated—a compatibility which, by a benign fiction, we assume Congress always has in mind. I would not permit any of the historical and legislative material discussed by the Court, or all of it combined, to lead me to a result different from the one that these factors suggest.

I would analyze this case, in brief, as follows:

(1) The word "defendant" in Rule 609(a)(1) cannot rationally (or perhaps even constitutionally) mean to provide the benefit of prejudice-weighing to civil defendants and not civil plaintiffs. Since petitioner has not produced, and we have not ourselves discovered, even a snippet of support for this absurd result, we may confidently assume that the word was

not used (as it normally would be) to refer to all defendants and only all defendants.

(2) The available alternatives are to interpret "defendant" to mean (a) "civil plaintiff, civil defendant, prosecutor, and criminal defendant," (b) "civil plaintiff and defendant and criminal defendant," or (c) "criminal defendant." Quite obviously, the last does least violence to the text. It adds a qualification that the word "defendant" does not contain but, unlike the others, does not give the word a meaning ("plaintiff" or "prosecutor") it simply will not bear. The qualification it adds, moreover, is one that could understandably have been omitted by inadvertence—and sometimes is omitted in normal conversation ("I believe strongly in defendants' rights"). Finally, this last interpretation is consistent with the policy of the law in general and the Rules of Evidence in particular of providing special protection to defendants in criminal cases.*

(3) As well described by the Court, the "structure of the Rules," *ante*, at 525, makes it clear that Rule 403 is not to be applied in addition to Rule 609(a)(1).

I am frankly not sure that, despite its lengthy discussion of ideological evolution and legislative history, the Court's reasons for both aspects of its decision are much different from mine. I respectfully decline to join that discussion, however, because it is natural for the bar to believe that the ju-

---

*Acknowledging the statutory ambiguity, the dissent would read "defendant" to mean "any party" because, it says, this interpretation "extend[s] the protection of judicial supervision to a larger class of litigants" than the interpretation the majority and I favor, which "takes protection *away* from litigants." *Post*, at 534–535. But neither side in this dispute can lay claim to generosity without begging the policy question whether judicial supervision is better than the automatic power to impeach. We could as well say—and with much more support in both prior law, see *ante*, at 511–512, and this Court's own recommendation, see *ante*, at 517—that our reading "extend[s] the protection of [the right to impeach with prior felony convictions] to a larger class of litigants" than the dissent's interpretation, which "takes protection *away* from litigants."

ridical importance of such material matches its prominence in our opinions—thus producing a legal culture in which, when counsel arguing before us assert that "Congress has said" something, they now frequently mean, by "Congress," a committee report; and in which it was not beyond the pale for a recent brief to say the following: "Unfortunately, the legislative debates are not helpful. Thus, we turn to the other guidepost in this difficult area, statutory language." Brief for Petitioner in *Jett* v. *Dallas Independent School District*, O. T. 1988, No. 87–2084, p. 21.

For the reasons stated, I concur in the judgment of the Court.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Federal Rule of Evidence 609(a) has attracted much attention during its relatively short life. This is due in no small part to its poor and inartful drafting. See, *e. g.*, 10 J. Moore & H. Bendix, Moore's Federal Practice § 609.14[4], p. V–148 (2d ed. 1988); Foster, Rule 609(a) in the Civil Context: A Recommendation for Reform, 57 Ford. L. Rev. 1, 4 (1988); Younger, Three Essays on Character and Credibility under the Federal Rules of Evidence, 5 Hofstra L. Rev. 7, 11–12 (1976); Savikas, New Concepts in Impeachment: Rule 609(a), Federal Rules of Evidence, 57 Chicago Bar Rec. 76 (1975). As noted by the majority, *ante*, at 510–511, the Rule's use of the word "defendant" creates inescapable ambiguity. The majority concludes that Rule 609(a)(1) cannot mean what it says on its face. *Ante*, at 511. I fully agree.

I fail to see, however, why we are required to solve this riddle of statutory interpretation by reading the inadvertent word "defendant" to mean "criminal defendant." I am persuaded that a better interpretation of the Rule would allow the trial court to consider the risk of prejudice faced by any party, not just a criminal defendant. Applying the balancing provisions of Rule 609(a)(1) to all parties would have prevented the admission of unnecessary and inflammatory

evidence in this case and would prevent other similar unjust results until Rule 609(a) is repaired, as it must be. The result the Court reaches today, in contrast, endorses "the irrationality and unfairness," *ante*, at 524, of denying the trial court the ability to weigh the risk of prejudice to any party before admitting evidence of a prior felony for purposes of impeachment.

## A

The majority's lengthy recounting of the legislative history of Rule 609, *ante*, at 513–514, demonstrates why almost all that history is entitled to very little weight. Because the proposed rule changed so often—and finally was enacted as a compromise between the House and the Senate—much of the commentary cited by the majority concerns versions different from the Rule Congress finally enacted.

The only item of legislative history that focuses on the Rule as enacted is the Report of the Conference Committee, H. R. Conf. Rep. No. 93–1597 (1974). Admittedly, language in the Report supports the majority's position: the Report mirrors the Rule in emphasizing the prejudicial effect on the defendant, and also uses the word "convict" to describe the potential outcome. *Id.*, at 9–10. But the Report's draftsmanship is no better than the Rule's, and the Report's plain language is no more reliable an indicator of Congress' intent than is the plain language of the Rule itself.

Because the slipshod drafting of Rule 609(a)(1) demonstrates that clarity of language was not the Conference's forte, I prefer to rely on the underlying reasoning of the Report, rather than on its unfortunate choice of words, in ascertaining the Rule's proper scope. The Report's treatment of the Rule's discretionary standard consists of a single paragraph. After noting that the Conference was concerned with prejudice to a defendant, the Report, at 9–10, states:

> "The danger of prejudice to a witness other than the defendant (such as injury to the witness' reputation in his community) was considered and rejected by the Confer-

ence as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record."

The Report indicates that the Conference determined that any felony conviction has sufficient relevance to a witness' credibility to be admitted, even if the felony had nothing directly to do with truthfulness or honesty. In dealing with the question of undue prejudice, however, the Conference drew a line: it distinguished between two types of prejudice, only one of which it permitted the trial court to consider.

As the Conference observed, admitting a prior conviction will always "prejudice" a witness, who, of course, would prefer that the conviction not be revealed to the public. The Report makes clear, however, that this kind of prejudice to the witness' life outside the courtroom is not to be considered in the judicial balancing required by Rule 609(a)(1). Rather, the kind of prejudice the court is instructed to be concerned with is prejudice which "presents a danger of improperly influencing the outcome of the trial." Congress' solution to that kind of prejudice was to require judicial supervision: the conviction may be admitted only if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant." Rule 609(a)(1).

Although the Conference expressed its concern in terms of the effect on a criminal defendant, the potential for prejudice to the outcome at trial exists in any type of litigation, whether criminal or civil, and threatens all parties to the litigation. The Report and the Rule are best read as expressing Congress' preference for judicial balancing whenever there is a chance that justice shall be denied a party because

of the unduly prejudicial nature of a witness' past conviction for a crime that has no direct bearing on the witness' truthfulness. In short, the reasoning of the Report suggests that by "prejudice to the defendant," Congress meant "prejudice to a party," as opposed to the prejudicial effect of the revelation of a prior conviction to the witness' own reputation.

## B

It may be correct, as JUSTICE SCALIA notes in his opinion concurring in the judgment, that interpreting "prejudicial effect to the defendant" to include only "prejudicial effect to [a] *criminal* defendant," and not prejudicial effect to other categories of litigants as well, does the "least violence to the text," *ante*, at 529, if what we mean by "violence" is the interpolation of excess words or the deletion of existing words. But the reading endorsed by JUSTICE SCALIA and the majority does violence to the logic of the only rationale Members of Congress offered for the Rule they adopted.

Certainly the possibility that admission of a witness' past conviction will improperly determine the outcome at trial is troubling when the witness' testimony is in support of a criminal defendant. The potential, however, is no less real for other litigants. Unlike JUSTICE SCALIA, I do not approach the Rules of Evidence, which by their terms govern both civil and criminal proceedings, with the presumption that their general provisions should be read to "provid[e] special protection to defendants in criminal cases." *Ibid.* Rather, the Rules themselves specify that they "shall be construed to secure fairness in administration . . . to the end that the truth may be ascertained and proceedings justly determined" in *all* cases. Rule 102. The majority's result does not achieve that end.

## C

The interpretation the majority adopts today, which limits the word "defendant" to mean *less* than it appears to mean on its face, creates an additional danger: the Rule as so inter-

preted is a trap for the unwary. As noted by the majority, the "Rule's plain language commands weighing of prejudice to a defendant in a civil trial as well as in a criminal trial." *Ante*, at 509. One of the primary purposes for enacting a set of evidentiary rules is to present precise answers to frequently posed questions. "A codification should be so wrought that it supplies answers to a lawyer's questions simpler, more comprehensible, and more easily found than those the lawyer could discover without the codification." Younger, Introduction, Symposium: The Federal Rules of Evidence, 12 Hofstra L. Rev. 251, 252 (1984). Relying on the plain language of Rule 609(a)(1), an attorney representing a civil defendant might well instruct his client's witness to take the stand, believing that a judge would pass upon the question whether "the probative value of admitting" the evidence of his prior conviction "outweighs its prejudicial effect." Yet under the majority's view, reliance on the plain language of the Rule would have been error on counsel's part. Now every lawyer who takes Rule 609(a) at face value will commit the same error, until the language of the Rule is changed. While in theory it is easy to presume that every busy practicing attorney keeps abreast of every single one of this Court's decisions, in the "real world" this obviously is not the case. The implications of the majority's opinion today require every lawyer who relies upon a Federal Rule of Evidence, or a Federal Rule of Criminal, Civil, or Appellate Procedure, to look *beyond* the plain language of the Rule in order to determine whether this Court, or some court controlling within the jurisdiction, has adopted an interpretation that takes away the protection the plain language of the Rule provides.

### D

As I see it, therefore, our choice is between two interpretations of Rule 609(a)(1), neither of which is completely consistent with the Rule's plain language. The majority's interpretation takes protection *away* from litigants — *i. e.*, civil

defendants—who would have every reason to believe themselves entitled to the judicial balancing offered by the Rule. The alternative interpretation—which I favor—also departs somewhat from the plain language, but does so by *extending* the protection of judicial supervision to a larger class of litigants—*i. e.*, to all parties. Neither result is compelled by the statutory language or the legislative history, but for me the choice between them is an easy one. I find it proper, as a general matter and under the dictates of Rule 102, to construe the Rule so as to avoid "unnecessary hardship," see *Burnet* v. *Guggenheim*, 288 U. S. 280, 285 (1933), and to produce a sensible result. See, *e. g.*, sources listed by the Court, *ante*, at 512–513, n. 11.

This case should have been decided on the basis of whether the Bock Laundry Machine Company designed and sold a dangerously defective machine without providing adequate warnings. The fact that Paul Green was a convicted felon, in a work-release program at a county prison, has little, if anything, to do with these issues. We cannot know precisely why the jury refused to compensate him for the sad and excruciating loss of his arm, but there is a very real possibility that it was influenced improperly by his criminal record. I believe that this is not a result Congress conceivably could have intended, and it is not a result this Court should endorse.

As the majority concludes otherwise, my hope is that Rule 609(a)(1) will be corrected without delay, preferably into a form that allows judicial oversight over, at the least, the use of any felony conviction that does not bear directly on a witness' honesty. It is encouraging that some efforts in this direction appear to be underway, see *ante*, at 523, n. 29, and that the damage Congress caused by its poor draftmanship soon may be undone.

I respectfully dissent.