# Definition of "Candidate" Under 18 U.S.C. § 207(j)(7)

For purposes of the "on behalf of a candidate" exemption contained in section 207(j)(7) of title 18, a successful candidate should be viewed as seeking office until the candidate assumes the office to which he or she has been elected.

November 6, 2000

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF GOVERNMENT ETHICS

You have asked for our opinion regarding the application of the exemption contained in 18 U.S.C. § 207(j)(7) (Supp. IV 1998) to the activities of certain former executive branch employees who serve on a Presidential transition team. Specifically, you have asked us when an individual ceases to be a candidate for purposes of this exemption.

Subsection (c) of § 207 prohibits certain former officers or employees of the executive branch from communicating on behalf of any person except the United States, within one year of termination, with the department or agency in which the officer or employee served. In the case of certain "very senior personnel of the executive branch," including the Vice President, subsection (d) extends this ban to communications to certain high level officials in other agencies. Subsection (j)(7)[1] provides an exemption from this restriction for individuals who communicate or appear solely on behalf of a candidate in his or her capacity as a candidate so long as, at the time of the communication or appearance, the person is not employed by a person or entity other than the candidate (except for a person or entity who only represents or advises candidates). Subsection (7)(j)(C)(i) defines the term "candidate" to mean:

> [A]ny person who seeks nomination for election, or election, to Federal or State office or who has authorized others to explore on

---

[1] Subsections (j)(7)(A), (B) provide·

(A) Except as provided in subparagraph (B), the restrictions contained in subsections (c), (d), and (e) shall not apply to a communication or appearance made solely on behalf of a candidate in his or her capacity as a candidate, an authorized committee, a national committee, a national Federal campaign committee, a State committee, or a political party

(B) Subparagraph (A) shall not apply to —

(i) any communication to, or appearance before, the Federal Election Commission by a former officer or employee of the Federal Election Commission; or

(ii) a communication or appearance made by a person who is subject to the restrictions contained in subsections (c), (d), or (e) if, at the time of the communication or appearance, the person is employed by a person or entity other than —

(I) a candidate, an authorized committee, a national committee, a national Federal campaign committee, a State committee, or a political party, or

(II) a person or entity who represents, aids, or advises only persons or entities described in subclause (I)

18 U.S.C. § 207(j)(7)(A), (B).

288

his or her behalf the possibility of seeking nomination for election, or election, to Federal or State office.

18 U.S.C. § 207(j)(7)(C)(i).

The exemption provided for in § 207(j)(7) was added to the ethics statute in August of 1996 by the Office of Government Ethics Authorization Act of 1996. *See* 110 Stat. 1566, 1567 (1996). At a minimum, the definition of "candidate" set forth in subsection (j)(7)(C)(i) explicitly establishes that a person holds the status of a candidate so long as he "seeks . . . election" to office. Ordinarily, a candidate would be thought to seek election to an office up to the point at which his or her election to that office is determined. In the case of the office of President and Vice President, the actual election of the candidate takes place through the electoral college. *See* U.S. Const. art. II, § 1 & amend. XII. After the state electors cast their votes, the outcome of the election is declared by the President of the Senate, who, in the presence of the entire Congress, counts the votes. U.S. Const. amend. XII; *see also* 3 U.S.C. § 15 (1994) (after President of the Senate counts the vote, his announcement will be deemed a sufficient declaration of the persons elected to President and Vice President). You have informed us that the votes of the electors will likely be tallied on January 6, 2001. *See also* 3 U.S.C. § 15. Under the Constitution, until the votes of the electors have been tallied and certified, all candidates for President and Vice President retain their status as candidates. Neither the President nor the Vice President is "elected" until the conclusion of that procedure. *See* U.S. Const. art. II, § 1 & amend. XII.

You have noted, however, that "even if a candidate continues to be a candidate up to the day of the presentation of the electors' votes to the Congress, this would still leave a significant period of time in which transition activities will continue prior to the day of the inauguration of the President." Letter for Randolph D. Moss, Assistant Attorney General , Office of Legal Counsel, from F. Gary Davis, Acting Director, Office of Government Ethics at 2 (Oct. 6, 2000). Implicit in your letter is the question whether a candidate for President or Vice President can be deemed a "candidate" up until the point of inauguration in order to permit an orderly and effective transition from one elected official to another.[2] The general understanding of a "candidate" is "one that presents himself or is presented by others . . . as suitable for and aspiring to an office." Webster's Third New International Dictionary at 325 (1993). This is consistent with the statutory definition, which refers to a person who "seeks nomination for election, or election." To "elect," in the context of an election to office, is generally defined as "to

---

[2] We previously addressed the issue of whether the one year bar prohibiting certain former government employees from contacting their former agency, contained in 18 U S.C. § 207(c), applied to former government employees who were working for the President-elect's transition team *See Applicability of 18 U S C § 207(c) to President-Elect's Transition Team,* 12 Op. O.L.C 264 (1988) However, that advice predated the enactment of § 207(j)(7)'s exemption.

choose (a person) for an office," and when used as an adjective ordinarily means "chosen for office or position but not yet installed." *Id.* at 731. This would appear to support a reading of the statute that would terminate a person's status as a candidate once the final selection had taken place, even though he or she had not yet been sworn into office. As previously discussed, for a presidential candidate, this would occur on January 6th.

However, in light of the legislative history and purpose of this statutory amendment, giving the term "candidate" its ordinary meaning in applying this exemption creates an irrational distinction between those communications made by former government officials and employees on behalf of a candidate prior to that candidate's election and those communications that take place after the election, when the candidate has become the President-elect or Vice President-elect. When the literal interpretation of a statute would produce an absurd result, the words at issue should be given alternative meaning to avoid such a consequence. *Green v. Bock Laundry Machines Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring). *See also South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 346 (1998). In this case, not only do the legislative history and purpose of this statutory amendment support an application of the word "candidate" that is broader in scope than its ordinary meaning, extending until the person in question assumes office, but they also make clear that a narrower interpretation would yield a bizarre result.

> The House Report to the ethics amendment explains that:

> The purpose of the post-employment restrictions for former staff is to prevent pecuniary gain by individuals due to a prior relationship within his or her former office. In the case of a leave of absence or resignation to work on a campaign, however, the "cooling-off" period should not apply.

H.R. Rep. No. 104–595, at 9 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1356, 1364. Accordingly, communications or appearances "made solely on behalf of a candidate . . . are excepted from the post-employment restrictions." *Id.* Congress enacted this exception to ensure that the ethics statute did not have an unintended, and wholly irrational, consequence. Without it, a person who worked for a member of Congress or the President or Vice President, and then joined that person's campaign team, would have committed a criminal offense if he or she communicated with that person or his or her staff within a one year period. As Senator Levin explained:

> What we overlooked at the time was the situation where congressional staff and top executive department officials may leave their Government positions to work on the reelection campaigns of the

persons for whom they worked while in the Government. For example, the administrative assistant of one of our colleagues may take a leave of absence and work on the reelection campaign for that same Member. If that happens, that administrative assistant should not be barred from contacting the Member or his staff on behalf of the campaign, since the interests of the campaign and the Member are really the same. Such a bar, which was never intended, would basically make such employment impossible.

142 Cong. Rec. 18,869, 18,871 (1996). Senator Cohen, in articulating his support of the bill, made it clear that fear of a former government employee taking unfair advantage of his access to his former office was not an issue:

[L]eaving Government service to work on a campaign doesn't involve the kind of abuse the revolving door rules are intended to address, that is, individuals trading on Government information and access for private gain.

*Id.* at 18,870. Representative Canady further articulated the principle behind the amendment as

one of allowing necessary communications integral to any campaign-related employment. Therefore, where the intention of the former employee is to participate in the electoral process subject to the narrow exception established by the protection of this bill, the revolving door restrictions of title 18 will no longer apply.

*Id.* at 12,943, 12,945. Senator Levin also emphasized that the amendment would in no way undermine the general purposes of the ethics statute because:

this bill would not permit [a] former staff person to contact his or her former office during the 1 year cooling off period on behalf of a client for whom he is serving as a lobbyist. The exception this bill makes is only for contacts by former staff on behalf of the campaign organizations of the Member or President-Vice President for whom the staff person previously worked. This limitation avoids giving an otherwise reasonable exception an unintended consequence.

*Id.* at 18,871.

Communications made by individuals who work solely for a candidate after the election but prior to that candidate being sworn into office are equally as unlikely to result in private pecuniary gain for the former government employee

and serve the same legitimate purposes as communications made by such individuals prior to the voting that determines the winner of the election. The purpose of the subsection (j) exemption is to permit communications necessary to the campaign-related responsibilities of the employee. In light of these concerns and policies, we can discern no rational basis, under the subsection (j) exemption, for permitting a former government official to communicate with his former office on behalf of a candidate prior to January 5th, but prohibiting that same communication after the candidate's formal election on January 6th. In fact, it would seem logical that the principles of the ethics statute are even less at risk when the communication is made exclusively on behalf of a President-elect, rather than on behalf of a mere candidate for that office. To construe the statute to create such a distinction would be to create an absurdity.[3]

We acknowledge that the case of a former executive branch agency official or employee who joins a President-elect's transition team to assist with issues related to his or her former agency presents a slightly different situation than a former presidential, vice presidential or congressional staff member. In this situation, even absent the (j)(7) exemption, the former agency official would be able to communicate freely with his or her "candidate" and his or her candidate's office. Instead, the prohibition would apply to his or her communications with another government agency with which the President-elect or Vice President-elect presumably has an interest in dealing. Congress may not have had this precise situation in mind when it passed subsection (j)(7). However, the policy behind prohibiting a former government official from exercising undue influence on behalf of a private client or otherwise trading on government information or access for private gain, which is the concern expressed by Congress in the legislative history of the amendment, simply does not apply in this context either.

In sum, permitting an employee successfully to carry out his or her transition responsibilities may be even more crucial to the effective operation of our political system than the need to permit an employee to fulfill his or her campaign responsibilities. As we have previously acknowledged, the orderly transfer of the executive powers "is one of the most important public objectives in a democratic society." 12 Op. O.L.C. at 264. The transition period insures that the candidate will be able to perform effectively the important functions of his or her new office as expeditiously as possible. Therefore, to give full effect to the clear congressional intent behind subsection (j), it is apparent that individuals who otherwise meet the specifications and limitations of § 207(j)(7)(A) & (B) should be deemed to be communicating on behalf of a "candidate" through the point at which that "candidate" assumes the office to which he or she was elected.[4] In other words,

---

[3] This conclusion is consistent with our discussion of the purpose of the Act contained in the opinion cited in footnote 2.

[4] Certainly the same policy concerns do not apply to a candidate who is not elected to the office which he or she seeks. Rather, a candidate who is not elected to office would lose his or her status as a candidate at the point the outcome of the election was finalized

for purposes of § 207 (j), a successful candidate should be viewed as seeking office until he or she actually assumes that office. After that point, any communications by the former employee on behalf of the office holder will be communications on behalf of the ''United States,'' and therefore exempt from the prohibitions of the Act. *See* 18 U.S.C. § 207(c)(1).

RANDOLPH D. MOSS
*Assistant Attorney General*
*Office of Legal Counsel*

293