**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:

Marilyn Kelly    Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis

FILED DECEMBER 29, 2010

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHIGAN EDUCATION
ASSOCIATION,

       Petitioner-Appellant,

v                                                    No. 137451

SECRETARY OF STATE,

       Respondent-Appellee.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

At issue in this case is whether a public school may administer payroll deductions for its employees who remit funds to the Michigan Education Association Political Action Committee (MEA-PAC), a segregated fund under MCL 169.255.

We conclude that the Court of Appeals clearly erred by holding that administration of a payroll deduction system is not allowed under Michigan law. We reverse the Court of Appeals' judgment because a public school's administration of a payroll deduction

system (the system) that remits funds to a segregated fund is not precluded by any prohibition in MCL 169.257(1) and is therefore permitted.

MCL 169.257(1), commonly referred to as § 57 of the Michigan Campaign Finance Act (MCFA),[1] specifically prohibits a public body from using public resources to do three things: (1) make an expenditure, (2) make a contribution, and (3) "provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)" of the MCFA, MCL 169.204(3)(a).[2] First, the administration of such a system is not an "expenditure" under the MCFA because the cost of administration is an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee,"[3] which is an enumerated exception to the statutory definition of "expenditure." Second, administration of the system is not a "contribution" as defined by the MCFA because there is no net conveyance of anything of monetary value made for the purpose of influencing the nomination or election of a candidate or for the qualification, passage, or defeat of a ballot question. Last, a public school's administration of a payroll deduction system does not "provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)"[4] as defined by the MCFA because the MEA-PAC fully anticipates prepayment

---

[1] MCL 169.201 *et seq*.

[2] MCL 169.257(1).

[3] MCL 169.206(2)(c).

[4] MCL 169.257(1).

2

for any administration costs. Thus, the administration of a payroll deduction system by a public school is permitted under the MCFA.

## I. FACTS AND PROCEEDINGS

Petitioner, the Michigan Education Association (MEA), is a voluntary, incorporated labor organization that represents members employed by public schools, colleges, and universities throughout Michigan. The MEA's political action committee, MEA-PAC, is a separate segregated fund under § 55 of the MCFA. MCL 169.255. According to the MEA, the MEA-PAC is funded in part by MEA member payroll deductions. The MEA (or its affiliates) has entered into collective bargaining agreements with various public school districts throughout the state that require the school district employer to administer a payroll deduction plan for contributions to the MEA-PAC. The current case involves such an agreement between the Kalamazoo County Education Association/Gull Lake Education Association and the Gull Lake Public Schools. The Gull Lake collective bargaining agreement also requires the Gull Lake Public Schools to make other payroll deductions, such as the payment of MEA dues and service fees. The MEA plans to pay the Gull Lake Public Schools, in advance, for all anticipated costs to Gull Lake Public Schools attributable to administering payroll deductions to the MEA-PAC or any other separate segregated fund affiliated with the MEA. The MEA contends that under this proposal, Gull Lake Public Schools would not incur any costs or expenses in administering the requested deductions because the Gull Lake Public Schools would be paid in advance for such costs and expenses.

As a condition to implementing the collective bargaining agreement, a representative of the Gull Lake Public Schools requested that the MEA obtain a declaratory ruling on the validity of the payroll deduction system. On August 22, 2006, the MEA filed a request for a declaratory ruling with respondent, the Secretary of State. The MEA detailed its proposal for payroll deductions to be made by the Gull Lake Public Schools and asserted that the administration of the payroll deductions by the school district would not be an "expenditure" under the MCFA and would not violate § 57 of the MCFA, MCL 169.257. The MEA requested that the Gull Lake Public Schools be allowed to make and transmit payroll deductions requested by MEA members to MEA-PAC as long as the members had filled out voluntary consent forms and either the MEA or the MEA-PAC had paid the school district, in advance, for any costs associated with administering those payroll deductions. The MEA also asked the Secretary of State for a declaratory ruling on what costs it should consider in determining the costs attributable to administering the payroll deductions that are to be transmitted to the MEA-PAC.

On November 20, 2006, the Secretary of State ruled that the Gull Lake Public Schools could not make and transmit payroll deductions requested by MEA members to the MEA-PAC because § 57 of the MCFA prohibits a public body from making expenditures or collecting contributions for a political action committee. The ruling noted that the Department of State and the Attorney General had both previously concluded that a public body is prohibited from collecting and remitting contributions to a committee through its administration of a payroll deduction plan. The ruling explained that § 55 of the MCFA allows named private entities to make expenditures for the establishment and administration and solicitation of contributions to a separate segregated

4

fund.  However, the ruling stated that no explicit provision in the MCFA authorizes a public body to do so and concluded that the school district is prohibited from expending governmental resources for a payroll deduction plan that deducts wages from its employees on behalf of the MEA-PAC.

The Secretary of State's ruling further concluded that paying the costs of administering the payroll deductions in advance would not effectively avoid a violation of § 57.  This conclusion was based on an analysis of this issue in a recent opinion of the Attorney General.  OAG, 2005-2006, No 7187, p 81 (February 16, 2006).  Because the Secretary of State concluded that administration of a payroll deduction system would violate the MCFA, the ruling did not address what costs should be considered attributable to administering the payroll deductions or the dollar amount that should be prepaid.

The MEA petitioned for review of the declaratory ruling in the Ingham Circuit Court.  On September 4, 2007, the trial court issued an opinion setting aside the declaratory ruling on the grounds that it was arbitrary, capricious, and an abuse of discretion.  The trial court opined that if the costs of administration are paid in advance, administration of payroll deductions does not result in transfer of money to a union's political action committee and, therefore, an "expenditure" has not been made within the meaning of the MCFA.  Thus, the trial court held that a public body may administer payroll deductions as long as all the costs of making deductions are paid in advance.

The Secretary of State applied for leave to appeal in the Court of Appeals, which was granted.  In a split decision, the Court of Appeals reversed the trial court's opinion and held that, regardless of advance payment for the associated costs, a public school's administration of a payroll deduction system is still an "expenditure" under the MCFA

5

and thus prohibited.[5]   Judge WHITBECK dissented, and would have held that administration of a payroll deduction system is not an "expenditure"[6] as the MCFA defines it.

The MEA sought leave to appeal in this Court.  This Court granted oral argument on whether to grant the application[7] and subsequently granted leave to appeal.[8]

---

[5] *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 486-487; 761 NW2d 234 (2008).

[6] *Id*. at 490.

[7] *Mich Ed Ass'n v Secretary of State*, 483 Mich 1001 (2009).  The Court directed the parties to brief

> (1) whether a school district's use of government resources for a payroll deduction plan for contributions made by members of the . . . Michigan Education Association (MEA) to MEA's political action committee is either an "expenditure" or a "contribution" under § 6 of the Michigan Campaign Finance Act (MCFA), MCL 169.206; (2) whether § 57(1) of the MCFA, MCL 169.257(1), prohibits a school district from expending government resources for such a payroll deduction plan if the costs of the plan are prepaid by the MEA; and (3) whether a school district has the authority to collect and deliver payroll deductions for such contributions. [*Id*.]

[8] *Mich Ed Ass'n v Secretary of State*, 486 Mich 952 (2010).  In the order granting leave to appeal, this Court asked the parties to include among the issues to be briefed the effect, if any, of *Citizens United v Fed Election Comm*, 558 US__; 130 S Ct 876; 175 L Ed 2d 753 (2010), on this case.  We note that because the issues presented in this case can be resolved under Michigan law, we do not opine on the application of United States Supreme Court caselaw.

6

## II. ANALYSIS

The issue in this case is whether § 57 of the MCFA, MCL 169.257(1), prohibits a public school from administering a payroll deduction system that remits funds to the MEA-PAC. This is an issue of statutory construction, which we review de novo.[9]

To interpret the MCFA, we apply the established rules of statutory construction. "Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature."[10] Accordingly, a Court must interpret the language of a statute in a manner that is consistent with the legislative intent.[11] In determining the legislative intent, the actual language of the statute must first be examined.[12] "As far as possible, effect should be given to every phrase, clause, and word in the statute."[13] When considering the correct interpretation, a statute must be read as a whole.[14] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[15] In defining particular words within a statute, a court "must 'consider both the plain meaning of the

---

[9] *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 383; 617 NW2d 310 (2000).

[10] *Potter v McLeary*, 484 Mich 397, 410; 774 NW2d 1 (2009), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[11] *Potter*, 484 Mich at 411.

[12] *Id*. at 410.

[13] *Sun Valley*, 460 Mich at 237.

[14] See *id*.

[15] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

critical word or phrase as well as "its placement and purpose in the statutory scheme."""[16] When a statute explicitly defines a term, the statutory definition controls.[17]

In applying these established rules of statutory construction, we start our analysis with a review of the relevant statutory language. Section 57 of the MCFA, MCL 169.257(1), prohibits public bodies from using public resources to make expenditures, contributions, or provide volunteer services that are excluded from the definition of "contribution" under § 4(3)(a) of that act, MCL 169.204(3)(a). The statute provides in pertinent part:

> A public body or an individual acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources *to make a contribution or expenditure or provide volunteer personal services* that are excluded from the definition of contribution under section 4(3)(a). [MCL 169.257(1) (emphasis added).]

Thus, § 57 specifically prohibits a public body from using, or authorizing the use of, public resources to do three things: (1) make an expenditure, (2) make a contribution, or (3) provide volunteer services that are excluded from the definition of "contribution" under § 4(3)(a). The plain language of the statute does not prohibit any other activity. Therefore, if the administration of the payroll deduction system is not tantamount to doing one of these three things, the administration of the system is permissible under Michigan law.

---

[16] *Id.*, quoting *Sun Valley*, 460 Mich at 237, quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

[17] *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).

## A. EXPENDITURE

We first examine whether a public school's administration of a payroll deduction system that remits funds to the MEA-PAC is an impermissible expenditure under § 57. "Expenditure" is specifically defined by the MCFA, so this definition controls for purposes of applying § 57. The general definition of "expenditure" under the MCFA is set forth in § 6, which provides in pertinent part:

> (1) "Expenditure" means a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. Expenditure includes, but is not limited to, any of the following:

> (a) A contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomination or election of a candidate or the qualification, passage, or defeat of a ballot question.

> * * *

> (2) *Expenditure does not include any of the following:*

> (a) An expenditure for communication by a person with the person's paid members or shareholders and those individuals who can be solicited for contributions to a separate segregated fund under [MCL 169.255].

> * * *

> (c) *An expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee.* [MCL 169.206 (emphasis added).]

Thus, MCL 169.206(1) details the general definition of "expenditure," which is expansive. It includes a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the

9

qualification, passage, or defeat of a ballot question. The definition also includes a contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomination or election of a candidate or the qualification, passage, or defeat of a ballot question. However, despite its expansive scope, the statutory definition of "expenditure" contains explicit exceptions under MCL 169.206(2), outlining items that cannot be considered an expenditure under the MCFA even though they may qualify under the expansive general definition outlined in MCL 169.206(1).

We now consider whether a public school's administration of a payroll deduction system is an "expenditure" as defined by the MCFA. The administration of a payroll deduction system does arguably provide services to the MEA and the MEA-PAC in facilitating payroll deductions from members by providing personnel and computer services. The system allows MEA members to authorize the school to automatically deduct money from their paychecks and remit the funds to the MEA-PAC. The MEA-PAC is a separate segregated fund under MCL 169.255 because it has been established by the MEA, a labor organization, to make contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees.[18] Thus, the payroll deduction system

---

[18] MCL 169.255(1) provides, in pertinent part:

> A corporation organized on a for profit or nonprofit basis, a joint stock company, a domestic dependent sovereign, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes. A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate

administers member contributions to a separate segregated fund. Although this process falls within the general definition of "expenditure" under MCL 169.206(1), the administration of such a system is explicitly excluded from the statutory definition under MCL 169.206(2)(c). To reiterate, MCL 169.206(2)(c) *excludes* from the definition of "expenditure" any "expenditure for the establishment, administration, or solicitation of contributions to *a separate segregated fund or independent committee*."[19] A public school's administration of a payroll deduction falls squarely within the statutory exception. The system is set up to facilitate MEA member contributions to their separate segregated fund, the MEA-PAC. Therefore, the administration of the system is *not* an "expenditure" under the MCFA.

The Secretary of State argues that the statutory exception in MCL 169.206(2)(c) should not be applied to public bodies because the Legislature intended to treat public bodies differently from private entities and political action committees under the MCFA. However, this argument disregards the plain language of the statute. MCL 169.206(2)(c) is contained within the definitional provisions of the MCFA and includes no language limiting its application to sections of the MCFA that deal only with private entities and political action committees. MCL 169.201(2), on the other hand, explicitly mandates that "[e]xcept as otherwise defined in this act, the words and phrases defined in [MCL 169.202 to 169.212] shall, for the purposes of this act, have the meanings ascribed to

---

committees, ballot question committees, political party committees, political committees, and independent committees.

[19] MCL 169.206(2)(c).

11

them in those sections." Thus, the statutory definition of "expenditure" controls and applies to the entire MCFA, including § 57, exceptions and all.

The Court of Appeals clearly erred by holding that a public school's administration of a payroll deduction system is an expenditure. Without providing any independent statutory analysis, the Court of Appeals concluded that the administration of the system is an expenditure by relying solely on the Secretary of State's prior interpretation of the term. The Court of Appeals reasoned:

> The Secretary previously issued an interpretive statement indicating that "the department interprets the term 'expenditure' to include the costs associated with collecting and delivering contributions to a committee" and that "[a] payroll deduction system is one method of collecting and delivering contributions." Interpretative Statement to Mr. Robert LaBrant (November 14, 2005).[20]

Without any independent statutory analysis, the Court of Appeals then concluded: "We find nothing in the plain language of the MCFA that indicates reimbursement negates something that otherwise constitutes an expenditure."[21]

The Court of Appeals erred by considering whether a supposedly illegal expenditure could be cured without first analyzing whether the Secretary of State's interpretation of the term "expenditure" comported with the statute. The Secretary of State's interpretation of the MCFA is not binding on the judiciary, and the Court of Appeals should have independently considered whether the administration of a payroll

---

[20] *Mich Ed Ass'n*, 280 Mich App at 486.

[21] *Id*.

deduction system is an "expenditure."[22] Most importantly, the Secretary of State's interpretation of "expenditure" is incorrect because it directly conflicts with the relevant statutory language. The Secretary of State's interpretation of "expenditure" includes costs associated with collecting and delivering contributions to a committee. But, as previously explained, the statutory definition of "expenditure" explicitly excludes these costs. As a result, the Court of Appeals clearly erred by adopting respondent's interpretation of "expenditure." The plain language of the statute dictates that the administration costs at issue are excluded from the statutory term "expenditure."

Administration of a payroll deduction system is an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee," and thus is an enumerated exception to the statutory definition of "expenditure." Therefore, the administration of the payroll deduction system is not an "expenditure" as defined by the MCFA and is not prohibited by § 57 on that ground.

## B. CONTRIBUTION

We next examine whether a public school's administration of a payroll deduction system is an impermissible "contribution" under the MCFA.[23] "Contribution," like

---

[22] This Court is not bound by the Secretary of State's interpretations of the law or by Attorney General opinions. See *Traverse City Sch Dist v Attorney General*, 384 Mich 390, 412; 185 NW2d 9 (1971).

[23] Although the Court of Appeals did not consider whether administration of the payroll deduction system is a contribution, we nevertheless discuss the issue because it is another statutory basis for an argument that the administration of a payroll deduction system

13

"expenditure," is specifically defined by the MCFA, and this definition controls for purposes of application to § 57. The definition of "contribution" under the MCFA is set forth in MCL 169.204, which provides:

(1) "Contribution" means a payment, gift, subscription, assessment, *expenditure*, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, *or a transfer of anything of ascertainable monetary value* to a person, *made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question*.

(2) Contribution includes the *full purchase price* of tickets or payment of an attendance fee for events such as dinners, luncheons, rallies, testimonials, and other fund-raising events; an individual's own money or property other than the individual's homestead used on behalf of that individual's candidacy; the granting of discounts or rebates not available to the general public; or the granting of discounts or rebates by broadcast media and newspapers not extended on an equal basis to all candidates for the same office; and the endorsing or guaranteeing of a loan for the amount the endorser or guarantor is liable.

(3) *Contribution does not include any of the following*:

(a) Volunteer personal services provided without compensation, or payments of costs incurred of less than $500.00 in a calendar year by an individual for personal travel expenses if the costs are voluntarily incurred without any understanding or agreement that the costs shall be, directly or indirectly, repaid.

(b) Food and beverages, not to exceed $100.00 in value during a calendar year, which are donated by an individual and for which reimbursement is not given.

(c) *An offer or tender of a contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt.* [Emphasis added.]

---

might be impermissible and the litigants have briefed and argued the issue before this Court.

The statutory definition of "contribution" includes the term "expenditure." Because "expenditure" is explicitly defined by the MCFA, the statutory definition controls.[24] We have already explained why the administration of a payroll deduction system is not an "expenditure" under the MCFA and thus cannot be a contribution on that basis. The only other way that the administration of the system could be a "contribution" under the MCFA would be if administering the system resulted in a "transfer of anything of ascertainable monetary value . . . made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."

The Secretary of State argues that the actual and intangible costs associated with the administration of a payroll deduction system constitute a contribution because there is a transfer of something of ascertainable monetary value from the school district to the MEA-PAC and the transfer, although made pursuant to a collective bargaining agreement, is made for the purpose of influencing the nomination or election of a candidate or for the qualification, passage, or defeat of a ballot question. The Secretary of State asserts that the labor and computer resources that are expended to administer the payroll deduction system have an ascertainable monetary value, and the fact that they are expended for the benefit of the MEA-PAC conveys value to the MEA-PAC. The Secretary of State further argues that prepayment for the services does not negate the transfer because MEA-PAC still receives the benefit of the services.

We disagree with this interpretation of the word "transfer" in the statute. Because "transfer" is a nontechnical word that is not defined within the statute, we first look to the

_____

[24] *Tryc*, 451 Mich at 136.

15

plain meaning of the term to ascertain what the Legislature intended by using "transfer" to define a "contribution."[25] The first dictionary definition of "transfer" is "to convey or remove from one place, person, etc., to another."[26] In order for there to be a contribution, "anything of ascertainable monetary value" must be conveyed from one entity to another.

There are two competing ways in which to interpret the word "transfer" in the statute. The first way to read the statute would require that any conveyance of value for services provided to a campaign, regardless of whether the services are paid for, would constitute a contribution. The second way to read the statute would require a net conveyance of value in order to be a "transfer of anything of ascertainable monetary value."

We conclude that the statute must be read to require a net conveyance of monetary value, as opposed to a mere exchange of value. Any other interpretation of "contribution" would lead to an absurd result, and statutes must be construed to prevent absurd results.[27] For example, if the statute were to be interpreted in the manner the Secretary of State suggests, then a print shop that sells signage to a campaign in the normal course of business would be making a contribution to the campaign because it has transferred something of monetary value to the campaign, even though the shop has been compensated for the cost of providing the signage. Such an interpretation of

---

[25] MCL 8.3a; *Oakland Co Bd of Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998).

[26] *Random House Webster's College Dictionary* (1997).

[27] *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

16

"contribution" would defy common sense, and we do not read the statute in this manner. Instead, we conclude that the statute requires a net conveyance of "anything of monetary value" in order for there to be a campaign contribution. If costs for administering the payroll deduction system are paid in advance, there is no net conveyance of anything of monetary value, and there is no contribution.

Furthermore, our conclusion that a "contribution" under MCL 169.204(1) requires a net transfer of value comports with the remainder of that section, which specifically *excludes* from the statutory definition of "contribution" any "contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt." MCL 169.204(3)(c). In other words, if the contribution is rejected, returned, or refunded, it is no longer a "contribution" under the MCFA. Moreover, MCL 169.204(2) explains that a "contribution" includes "the granting of discounts or rebates not available to the general public . . . ." This implies that when an entity provides products or services at full price, the entity is not making a contribution. Thus, the statute clearly requires that there be a net transfer of value in order for there to be a contribution under the MCFA.

The MEA plans to prepay the school district for all ascertainable costs associated with the administration of a payroll deduction system, and in fact asked the Secretary of State for a declaratory ruling regarding the costs to be prepaid. The administration of the payroll deduction system will not result in a net transfer of anything of ascertainable monetary value as all costs will be ascertained and prepaid. Accordingly, there is no contribution under the MCFA, and a public school's administration of a payroll deduction system is not prohibited by § 57 on that ground.

17

Additionally, a public school's administration of a payroll deduction system is not an impermissible contribution under the MCFA because the system is not administered "for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."[28] When a public body administers a payroll deduction plan, it does not do so in an attempt to influence a political race or a ballot question. Rather, administering the plan is one step removed: it merely allows *someone else* to make a contribution for the purpose of influencing a political issue. The public body administers the plan simply because it is required to do so as part of a labor contract between the public body and its employees. Consequently, because a public school's administration of a payroll deduction system is not done for the purpose of influencing a political issue, the administration of the system is not a contribution under the MCFA.[29]

---

[28] MCL 169.204(1).

[29] A public body has the authority to administer payroll deduction plans. The wages and fringe benefits act, MCL 408.477, provides that

> [e]xcept for those deductions required or expressly permitted . . . by a collective bargaining agreement, an employer shall not deduct from the wages of an employee, directly or indirectly, any amount including an employee contribution to a separate segregated fund established . . . under [MCL 169.255] without the full, free and written consent of the employee . . . .

Thus, under the plain language of MCL 408.477, public bodies have the authority to administer a payroll deduction plan that contributes money to the MEA-PAC if the MEA enters into a collective bargaining agreement that expressly permits the deductions.

## C.  VOLUNTEER PERSONAL SERVICES

Lastly, we examine whether a public school's administration of a payroll deduction system impermissibly "provide[s] volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)" of the MCFA.  As noted above, § 4(3) provides:

> Contribution does not include any of the following:
>
> (a) Volunteer personal services provided without compensation, or payments of costs incurred of less than $500.00 in a calendar year by an individual for personal travel expenses if the costs are voluntarily incurred without any understanding or agreement that the costs shall be, directly or indirectly, repaid.  [MCL 169.201(3).]

Although such services are thus not considered a contribution for purposes of the rest of the MCFA, § 57 specifically indicates that public bodies cannot use public resources to provide volunteer services that are not compensated.  However, the administration of the payroll deduction system at issue does not involve volunteer services by public employees because the MEA intends to prepay for all services rendered.  Because volunteer services are not defined by the statute, we again look to the plain meaning of the terms to discern the legislative intent.  Dictionary definitions of "volunteer" include "a person who performs a service willingly and without pay."[30] Willingness to perform an activity is not enough to fall within the scope of this subsection; the activity must also be performed without pay.  In this case, the MEA fully anticipates payment and plans to prepay for any administration costs.  As a result, a

---

[30] *Random House Webster's College Dictionary* (1997).

public school's administration of a payroll deduction system does not "provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)" of the MCFA and is not prohibited by § 57 on this final ground. Therefore, the administration of a payroll deduction system by a public school is permitted under the MCFA.

## III. CONCLUSION

A public school may administer payroll deductions for its employees who remit funds to the MEA-PAC, because MCL 169.257(1) only prohibits a public body from using public resources to do three things: (1) make an expenditure, (2) make a contribution, and (3) provide volunteer personal services that are excluded from the definition of "contribution" under MCL 169.204(3)(a). First, the administration of the system at issue is not an "expenditure" under the MCFA because the cost of administration is an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee,"[31] which is an enumerated exception to the statutory definition of "expenditure." Second, administration of the system is not a "contribution" as defined by the MCFA because there is no net conveyance of anything of monetary value made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question. Last, a public school's administration of a payroll deduction system does not "provide volunteer personal services that are excluded from the

---

[31] MCL 169.206(2)(c).

20

definition of contribution under [MCL 169.204(3)(a)]" because the MEA-PAC fully anticipates prepayment for any administration costs. Thus, the administration of a payroll deduction system by a public school is permitted under the MCFA, and the Court of Appeals erred by concluding that it is not. We reverse the judgment of the Court of Appeals.

Reversed.

Diane M. Hathaway
Marilyn Kelly
Michael F. Cavanagh
Alton Thomas Davis

21

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN EDUCATION ASSOCIATION,

        Petitioner-Appellant,

v                                   No. 137451

SECRETARY OF STATE,

        Respondent-Appellee.

_____

MARKMAN, J. (*dissenting*).

The issue in this case concerns the Legislature's mandated separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities. The Michigan Campaign Finance Act (MCFA) prohibits a "public body" from using public resources to make any "contribution or expenditure" for political purposes. MCL 169.257(1). The majority concludes that a school district's administration of a payroll deduction plan that remits funds to the Michigan Education Association's Political Action Committee (MEA-PAC) "is not precluded by any prohibition in MCL 169.257(1) and is therefore permitted." *Ante* at 1. I respectfully dissent, and believe that a school district's administration of a payroll deduction plan that remits funds to a partisan political action committee (a) constitutes a "contribution" because public resources are being used to advance the political objectives of the committee and (b) constitutes an "expenditure" because public "services" and "facilities in assistance of" these same political objectives are being provided. Thus, the

1

school district's payroll deduction plan is prohibited by § 57 of the MCFA, MCL 169.257. This interpretation is consistent not only with the language of the statute, but also with the evident purpose of § 57, which is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities. Accordingly, I would affirm the judgment of the Court of Appeals.

## I. FACTS AND HISTORY

Petitioner, the Michigan Education Association (MEA), is a voluntary, incorporated labor organization that represents approximately 136,000 members employed by public schools, colleges, and universities throughout Michigan. The MEA-PAC is a separate segregated political fund established by the MEA in accordance with § 55 of MCFA, MCL 169.255. The MEA-PAC is significantly funded by payroll deductions of MEA members who have authorized the deductions. The purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA in politics, by electing candidates favored by the MEA and by furthering the enactment of MEA legislative and executive policy initiatives.

As a public-employee labor organization, the MEA has entered into collective bargaining agreements with various public school districts across the state. Some number of these agreements, including that between the MEA's locally affiliated Kalamazoo County/Gull Lake Education Associations and the Gull Lake Community Schools (the school district), require that a school district administer a payroll deduction plan for the

2

contributions of MEA members to the MEA-PAC. In return, the MEA pays the school district the costs of the plan's administration.

On August 22, 2006, the MEA filed a request for a declaratory ruling with respondent, the Secretary of State, to determine whether the school district could continue to make and transmit payroll deductions to the MEA-PAC.[1] Respondent ruled that, absent express statutory authority, the school district is prohibited from expending public resources for a payroll deduction plan on behalf of the MEA-PAC. The MEA appealed to the circuit court, which held that respondent's ruling was "arbitrary, capricious and an abuse of discretion," reasoning that, although the school district's administration of the plan constitutes an "expenditure" under MCFA, when the costs of administering the plan have been reimbursed, "no transfer of money to the MEA-PAC has occurred, and therefore an 'expenditure' has not been made within the meaning of the MCFA."

In a split decision, the Court of Appeals reversed, holding that § 57 of MCFA prohibits a "public body," such as a school district, from using public resources "to make a contribution or expenditure." According to the Court, the costs associated with the plan constitute an "expenditure," and the reimbursement of such costs does not alter that conclusion. *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 486; 761 NW2d 234 (2008). The MEA then sought leave to appeal in this Court. On November 5, 2009, we

---

[1] The Secretary of State is authorized to issue declaratory rulings to implement the Michigan Campaign Finance Act, MCL 169.201 *et seq*., in accordance with the Administrative Procedures Act, MCL 24.201 to 24.328.

3

heard oral arguments on the application, and nearly seven months later we granted the MEA's application for leave to appeal.[2]

## II. STANDARD OF REVIEW

The interpretation of statutes constitutes a question of law that this Court reviews de novo on appeal. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. PURPOSE OF § 57

"It is well settled that the Legislature of this state is empowered to enact laws to promote and regulate political campaigns and candidacies." *Council No 11, AFSCME v Civil Serv Comm*, 408 Mich 385, 395; 292 NW2d 442 (1980) (citations omitted). The people of Michigan have granted the Legislature broad powers to regulate elections. Among other things, our Constitution empowers the Legislature to set forth the qualifications of electors; the time, place, and manner of elections; and limitations on terms of office. Const 1963, art 2, §§ 1 through 10. Furthermore, Const 1963, art 2, § 4 requires the Legislature to preserve the integrity of elections, providing in pertinent part:

> The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.

Charged to preserve the "purity of elections" and to "guard against abuses of the elective franchise," the Legislature enacted MCL 169.257, commonly referred to as § 57 of MCFA. Section 57 prohibits a "public body" from using public resources to "make a

---

[2] See the discussion in part VI of this opinion.

4

contribution or expenditure" for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question. The clear purpose of § 57, as reflected in its language, is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities.[3]

## IV. ANALYSIS

MCL 169.257(1) provides, in pertinent part:

> A public body or an individual acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of contribution under [MCL 169.204(3)(a)].

There is no question that a school district constitutes a "public body" within the meaning of § 57.[4] Accordingly, the issue in this case is whether a school district's administration of a payroll deduction plan that remits funds to a political action committee constitutes a

---

[3] See also, e.g., the political activities by public employees act, MCL 15.401 *et seq.* (providing that an employee of the state or local unit of government may not engage in political affairs during working hours); the Michigan Gaming Control and Revenue Act, MCL 432.201 *et seq.* (providing that members, employees, or agents of the Michigan Gaming Control Board may not engage in political activity for the duration of their employment); and Civil Service Rule 1-12.6 (prohibiting state employees from participating in political activities during working hours).

[4] MCFA defines a "public body" to include "[a] county, city, township, village, intercounty, intercity, or regional governing body; a council, school district, special district, or municipal corporation; or a board, department, commission, or council or an agency of a board, department, commissioner, or council." MCL 169.211(6)(c).

"contribution or expenditure" within the meaning of the same provision. If the plan does, it is expressly prohibited.

## A. "CONTRIBUTION"

MCL 169.204(1) defines a "contribution" as follows:

> "Contribution" means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person, made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.[5]

An "in-kind contribution" is defined as a "contribution . . . other than money." MCL 169.209(3).

The school district's administration of the payroll deduction plan that facilitates payments to the MEA-PAC constitutes a prohibited "contribution." First, the school district uses a variety of public resources to administer the plan. For example, the school district must use its paper, pens, and copiers to develop and execute payroll deduction authorization forms; school personnel must collect, enter, and monitor the data of participating MEA members into computers and accounting software, all of which must be specifically configured to record, track, and transmit payroll deductions to the MEA-PAC; school personnel must then be prepared to respond to individual teachers who find it necessary from time to time to adjust or correct or withdraw their own deduction authorizations; and this process must necessarily involve the use of public office space, equipment, and employee time.

---

[5] The MEA-PAC is a "person" because, as a separate segregated fund, it functions as the result of an organization or group of persons acting jointly. See MCL 169.211(1).

6

Second, the school district's administration of the payroll deduction plan constitutes something of "ascertainable monetary value" because there is inherent value to the MEA-PAC in having payroll deductions automatically taken from members' wages as opposed to requiring individual solicitations by the MEA-PAC. That there is such "ascertainable monetary value" is self-evident from the very fact that the MEA-PAC has affirmatively sought out the assistance of the school district and has litigated to the highest court of this state an appeal asserting its right to enter into the instant agreement with the school district. Parties do not typically enter into contracts absent a belief that the rights or benefits accorded them under the contract have some "ascertainable monetary value," and the instant contract seems no different. Such value can almost certainly be identified as the sum of (a) the additional contributions resulting from the ease of the payroll deduction process compared to a political contribution process in which individual solicitations must be undertaken and (b) the reduced administrative and transactional costs of the former process compared to the latter process. The MEA obviously prefers the payroll deduction process because it is a more efficient, and a more productive, process by which to secure funding for its political activities. The school district is not incidental to this process, but constitutes an indispensable element. Without the school district's contracted-for services, some lesser amount of contributions would presumably be raised on behalf of the MEA-PAC, and at a greater cost.

Third, the services undertaken on behalf of the MEA-PAC are "made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question," MCL 169.204(1), because, as discussed earlier, the purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA

7

in partisan politics.[6] Thus, the school district's administration of the deduction plan constitutes a "contribution," as that term is defined by MCL 169.204(1).[7] Because the school district employs public resources to make this "contribution," its administration of the deduction plan is a straightforward violation of § 57 of MCFA.

Moreover, the administration of the payroll deduction plan also constitutes an "in-kind contribution," defined by MCL 169.209(3), as a "contribution . . . other than

---

[6] The majority states that "[w]hen a public body administers a payroll deduction plan, it does not do so in an attempt to influence a political race or a ballot question." *Ante* at 17. However, the majority fails to recognize that MCL 169.204(1) defines "contribution" as "a *payment . . . made for the purpose* of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." (Emphasis added.) Therefore, the pertinent question is not whether the "public body" *itself* is attempting to influence a political race or ballot question, but whether the *payments* that result from its administration of the payroll deduction plan are intended for that purpose. It is obvious here that the "payment[s] [are] made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." This is the purpose that individual MEA members have in mind when they authorize payments, and it is the purpose that the MEA-PAC has in mind when it receives payments from the school district. It is equally obvious that the school district itself must be fully cognizant of this purpose both when it receives payments from individual MEA members and when it delivers payments to the MEA-PAC. The fact that the school district itself might not care whether such payments will influence a political race or ballot question does not alter that the *purpose* of these payments is to do precisely that.

[7] The majority further errs in its analysis when it concludes that administration of the plan "merely allows *someone else* to make a contribution for the purpose of influencing a political issue," *ante* at 17 (emphasis in original), i.e., the MEA member who has authorized the payroll deduction. Instead, the school district *itself* makes both a "contribution," and an "in-kind contribution," by providing valuable services to the MEA-PAC in aid and furtherance of its political activities. That is, quite independently of the contributions of individual MEA members, the school district contributes something of *further* "ascertainable monetary value" to the MEA-PAC.

8

money."[8]  Although it is clearly possible to quantify the time spent by employees and the resources expended by the school district in administering the deduction plan, and thereby to ascertain the cost of such a "contribution" to the school district itself, it is considerably more difficult to quantify the intangible benefits that the MEA receives from the deduction plan.  Moreover, it is quite certain that these benefits substantially outweigh the costs to the school district, and therefore cannot be calculated simply by reference to the school district's costs.  The most significant of these is simply the extent of *access* to a district's MEA membership that is afforded to the MEA-PAC by the deduction plan.  Such access avoids any need on the part of the MEA-PAC to establish its own administrative apparatus for political fundraising, vitiates its need to engage in costly mailings and alternative forms of communications with its members, and dispenses with its burden of having to process checks, money orders, or credit cards from contributors, as would have been necessary for any other solicitor of political contributions.  As MEA's counsel at oral argument acknowledged, this method has proved an "effective" means to raise money.  Almost certainly, the marginal administrative costs of the payroll deduction plan to the school district, which already may have in place a mechanism by which taxes and charitable contributions can be

---

[8] Respondent and the amici curiae supporting her devoted a significant portion of their briefs and time at oral arguments to explaining how the school district's administration of the deduction plan amounts to an "in-kind contribution," and yet the majority fails to even address this argument.  Although the majority provides no explanation or justification for this omission, I am nonetheless sympathetic to its plight.  It is just too difficult sometimes to argue that an animal that looks like a duck, walks like a duck, and squawks like a duck is not a "duck."

deducted from employees' paychecks, will be less than the marginal administrative costs of an equivalent plan to the MEA, which does not have a similar mechanism in place. The difference between these respective administrative costs can fairly be described as an "in-kind contribution" by the school district to the MEA-PAC, however difficult it may be to quantify in dollars. It is a "contribution . . . other than money" that is made for the "purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."

## B. "EXPENDITURE"

Section 57 of MCFA also prohibits a "public body" from using public resources to make an "expenditure." An "expenditure" is defined as

> a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. [MCL 169.206(1).]

The school district's administration of the payroll deduction plan on behalf of the MEA-PAC constitutes a prohibited "expenditure" because the school district directly provides "services" and "facilities in assistance of" the MEA-PAC. The school district provides "services" to the MEA-PAC in its administration of the deduction plan by developing and executing payroll deduction authorization forms; by collecting, entering, and monitoring the data of MEA members into computers and accounting software, all of which must be configured to record, track, and transmit payroll deductions to the MEA-PAC; and by accommodating individual teachers who find it necessary from time to time to adjust or correct or withdraw their deduction authorizations. Further, the school district provides "facilities in assistance of" the MEA-PAC through the use of public office space and

10

equipment. These "services" and "facilities in assistance of" the MEA-PAC are, once again, made for the purpose of "the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question," MCL 169.206(1)(a), because, as discussed previously, the purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA in politics, by electing candidates favored by the MEA and by enacting MEA legislative and policy initiatives. Thus, the school district's administration of the payroll deduction plan constitutes an "expenditure" as that term is defined by MCL 169.206(1)(a) and is specifically prohibited.

The majority concedes that the school district's administration of the deduction plan "falls within the general definition of 'expenditure' under MCL 169.206(1) . . . ." *Ante* at 10. However, the majority holds that the plan also falls within a specific statutory *exclusion* from the definition of an "expenditure." See *ante* at 10. This exception provides that an "expenditure" does not include "[a]n expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee." MCL 169.206(2)(c). According to the majority, a school district's administration of a payroll deduction plan that remits payments to a political action committee constitutes an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee" and is, therefore, allowed under § 57. *Ante* at 13. However, the majority overlooks that a "*public body*," such as a school district, is not authorized to "establish" a separate segregated fund under MCFA and, therefore, may not rely on the § 6(2)(c) exclusion.

Instead, this exclusion is clearly designed to apply only to corporations and labor organizations that possess the authority to create, establish, administer, or fund separate

11

segregated funds in the first place. This interpretation, limiting the § 6(2)(c) exclusion to corporations and labor organizations, is a necessary implication from the structure of MCFA for three reasons. First, § 54 of MCFA, MCL 169.254, imposes the same rule, prohibiting the making of a "contribution or expenditure," on corporations and labor organizations that § 57 imposes on public bodies. In pertinent part, § 54 provides:

> Except with respect to the exceptions and conditions in . . . *section 55* [MCL 169.255]. . . a corporation, joint stock company, domestic dependent sovereign, or labor organization shall not make a contribution or expenditure . . . . [MCL 169.254(1) (emphasis added).]

Second, unlike § 57, § 54 does not constitute an absolute prohibition against making a "contribution or expenditure;" rather, pursuant to § 55,

> [a] corporation organized on a for profit or nonprofit basis, a joint stock company, a domestic dependent sovereign, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes. A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees. [MCL 169.255(1).]

Third, there is no similar counterpart in § 57 that allows a "public body" to make "an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund . . . ." Thus, under § 55, the *only* entities allowed to establish a separate segregated fund are corporations, joint stock companies, domestic dependent sovereigns, or labor organizations, such as the MEA. Considered together, § 55 and the § 6(2)(c) exclusion that permits an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund" provide a limited mechanism allowing entities such as the MEA to create, establish, administer, or

fund a separate segregated fund for purposes that would otherwise be disallowed by § 54. In contrast, a "public body," such as a school district, is not entitled to create, establish, administer, or fund a separate segregated fund, under § 55 or any other provision, and thus may not rely on the § 6(2)(c) exclusion from the definition of an "expenditure."

Even if, as the majority claims, the § 6(2)(c) exclusion is not limited to § 55 entities, the majority's application of the exclusion remains utterly illogical. The majority concludes that although a school district's administration of the payroll deduction plan constitutes an "expenditure," it is nevertheless

> explicitly excluded from the statutory definition under MCL 169.206(2)(c) . . . [, which] excludes from the definition of "expenditure" any "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee." A public school's administration of a payroll deduction falls squarely within the statutory exception. The system is set up to facilitate MEA member contributions to their separate segregated fund, the MEA-PAC. Therefore, the administration of the system is not an "expenditure" under the MCFA.

> \* \* \*

> Most importantly, the Secretary of State's interpretation of "expenditure" is incorrect because it directly conflicts with the relevant statutory language. The Secretary of State's interpretation of "expenditure" includes costs associated with collecting and delivering contributions to a committee. But . . . the statutory definition of "expenditure" explicitly excludes these costs. . . . The plain language of the statute dictates that the administration costs at issue are excluded from the statutory term "expenditure." [*Ante* at 10, 12 (emphasis omitted).]

The majority thus concludes that the administration of a payroll deduction plan falls "squarely within the statutory exception." Under MCL 169.206(2)(c), an "expenditure" does not encompass what would otherwise be an "expenditure" for (a) establishment of a separate segregated fund or independent committee, (b) administration of a separate

13

segregated fund or independent committee, or (c) solicitation of contributions to a separate segregated fund or independent committee. Thus, in order to fall within the purview of this exception, a "public body" must be engaged in one of these enumerated activities. In this case, however, the school district is engaged in none.

First, the school district is not making an "expenditure" for the *establishment* of a separate segregated fund or independent committee because the separate segregated fund, the MEA-PAC, has already been established by the MEA. In any event, the school district could not establish a separate segregated fund in the first place, because that authority is limited to the entities enumerated in § 55 (corporations, joint stock companies, domestic dependent sovereigns, and labor organizations).

Second, the school district is not making an "expenditure" for the *administration* of a separate segregated fund or independent committee because the school district is not "administering" the MEA-PAC; rather, the school district is simply administering the payroll deduction plan that remits funds to the MEA-PAC. That is, the school district makes no determinations at all concerning amounts of funds to be raised from MEA members or other funding sources; the nature and substance of communications to MEA members and other funding sources about the need and urgency of such contributions; the identification of political candidates and causes as beneficiaries of the MEA-PAC, and in what amounts; or strategies for optimizing the impact of MEA-PAC participation in political campaigns and causes. The majority, however, holds that "[t]he plain language of the statute dictates that the administration costs at issue are excluded from the statutory term 'expenditure.'" *Ante* at 12. In so asserting, the majority misinterprets the statute, because the only administrative costs that are excluded under this exclusion are those

14

associated with administering a "separate segregated fund or independent committee." MCL 169.206(2)(c). That the school district is administering a *process* by which payments are *remitted* to such a fund is hardly the equivalent of administering the fund itself, such that the § 6(2)(c) exclusion would apply. The majority is badly confused in this regard.

Third, the school district is not making an "expenditure" for the *solicitation of contributions* to a separate segregated fund or independent committee; rather, the school district is using public resources for processing payments to the MEA-PAC. As discussed earlier, the school district's "expenditure" consists of the use of personnel, office space, computers, software, and other public resources to remit payments to the MEA-PAC. The school district is not, for example, maintaining an advertising campaign on behalf of the MEA-PAC, cold-calling MEA members, or preparing mailers or brochures to enlist contributors. As such, the school district's use of public resources for processing payments to the MEA-PAC cannot be viewed as *soliciting* contributions, but only as facilitating such contributions, an entirely distinct concept. It follows that because the school district's administration of the payroll deduction plan does not fall within any of the three enumerated exclusions set forth in MCL 169.206(2)(c), it is not excluded from the definition of an "expenditure."[9]

---

[9] Even assuming arguendo that the school district's administration of the payroll deduction plan constitutes "an expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee," which we believe it plainly does not, by its terms, the exclusion only applies to "expenditure," and not to "contribution."

## C. RELEVANCE OF ADVANCE PAYMENTS

Having determined that the school district's administration of the payroll deduction plan that remits payments to the MEA-PAC constitutes both a "contribution" and an "expenditure," the question remains whether the MEA's preparedness to pay in advance the school district's costs associated with the plan remedies what would otherwise constitute a violation of § 57. I do not believe that it does.

The Court of Appeals, in my judgment, correctly held that there is "nothing in the plain language of the MCFA that indicates reimbursement negates something that otherwise constitutes an expenditure." *Mich Ed Ass'n*, 280 Mich App at 486. A court's primary purpose in interpreting a statute is to ascertain and effectuate legislative intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). "Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999) (citations omitted). The Legislature declined to provide that advance payments remedy what would otherwise constitute a violation of § 57.

The suggestion that advance payments remedy a violation of § 57 is belied by the terms of the statute. Section 57 provides that "[a] public body . . . *shall not use or authorize the use*" of public resources to make a "contribution or expenditure . . . ." MCL 169.257(1) (emphasis added). The use of "shall" in a statute generally "indicates a mandatory and imperative directive." *Burton v Reed City Hosp Corp*, 471 Mich 745, 752; 691 NW2d 424 (2005) (citations omitted). As such, the statute mandates that the

16

school district not "use or authorize the use of" its public resources to make a "contribution" or an "expenditure." Nothing in MCFA leads to the conclusion that the Legislature intended § 57 to be interpreted any differently. Irrespective of whether the school district is reimbursed for its administration of the payroll deduction plan, the school district nonetheless has employed public resources to make a "contribution or expenditure" for political purposes.[10] The advance payment of expenses simply does not negate what § 57 is intended to prohibit. That is, the gravamen of § 57 is not that a "public body," whose resources have been employed for private political purposes be compensated on a dollar-for-dollar basis, but that public resources not be used for such purposes in the first place. That the costs of dismantling the wall separating government and partisan political campaigning are to be paid by those who desire to use taxpayer resources for their own campaigning is not the point of § 57; rather, it is that the wall not be dismantled.[11]

---

[10] Moreover, the advance payment of the school district's *expenses* in administering the deduction plan does not avoid the question of the *extent* to which an exchange of something of "ascertainable monetary value" has taken place. Where the school district has provided a service "at cost" to the MEA-PAC, even though the "ascertainable monetary *value*" of that service to the MEA-PAC exceeds that cost, as it almost always will in an economy in which service providers typically seek to profit from their services, further inquiry would be necessary concerning the specific terms of the school district-political action committee transaction, even if such a transaction were permissible in the first place under § 57.

[11] If the MEA-PAC is allowed to commandeer the resources of a "public body" simply by reimbursing its costs, there is nothing that would prevent the political action committee of any corporation from demanding or receiving the same treatment.

Furthermore, the unquantifiable cost to the school district, as well as to taxpayers, parents, and students, of having time and resources diverted from the school district's primary responsibilities of administering schools and educating students in order to administer a process of raising political contributions for the MEA-PAC cannot simply be paid in advance or reimbursed. Time is a zero-sum resource, and it is irretrievably lost to taxpayers, parents, and students when it is taken away from the former responsibilities and redirected to the latter responsibilities. If some lesser portion of each day is devoted to the interests of the school district and a greater portion of each day is devoted to the partisan political interests of a labor organization, taxpayers, parents, and students suffer. Although advance payment may recompense the school district its employees' salaries for the time spent on administration of the plan and for the use of supplies and other public resources, monetary reimbursement, paid in advance or otherwise, is simply insufficient to recover the time that is diverted from the primary obligations of the school district.

Moreover, because neither advance payments nor reimbursements prevent the prohibited "use" of public resources from occurring in the first place, the act is punishable as a misdemeanor and subject to a fine that may be "equal to the amount of the improper contribution or expenditure." MCL 169.257(2)(b). The fact that one of the penalties for making an improper "contribution or expenditure" requires the violator to pay an amount that is "equal to the amount of the improper contribution or expenditure" indicates strongly that such a payment, whether in the form of a "penalty" or a "reimbursement," does not transform an improper "contribution or expenditure" into a proper one. Had the Legislature intended otherwise, the misdemeanor statute would

18

more likely have read that the criminal sanction to be paid is "equal to the amount of the improper contribution or expenditure, *less any reimbursement of such contribution or expenditure*."[12]

## V. RESPONSE TO MAJORITY

As discussed previously, I believe that the majority errs by holding that a school district's administration of the payroll deduction plan is excluded from the definition of an "expenditure" under MCL 169.206(2)(c) because a "public body," such as a school district, is not authorized to create a separate segregated fund under MCFA and,

---

[12] The MEA also argues with regard to reimbursements that since the school district is reimbursed all costs and expenses, its administration of the deduction plan does not amount to a "contribution or expenditure" because a "contribution" does not encompass "[a]n offer or tender of a contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt," MCL 169.204(3)(c), and an "expenditure" does not include "[a]n offer or tender of an expenditure if expressly and unconditionally rejected or returned," MCL 169.206(2)(e). However, this argument clearly lacks merit because the MEA-PAC's offer to *reimburse expenses* can hardly be said to constitute a "rejection, return, or refund" of a "contribution" or an "expenditure." When the school district collects and remits payments from MEA members to the MEA-PAC, it makes an "offer or tender" of a "contribution or expenditure." To qualify for the "offer or tender" exception, the MEA-PAC would have to unconditionally "reject or return" the services of the school district, something which it neither does nor has any intention of doing. Because the school district's services are unconditionally accepted by the MEA-PAC, the school district's administration of the payroll deduction plan is not excluded from the definition of a "contribution" or an "expenditure" under either section of MCFA. Finally, the obvious should be observed, to wit, although the Legislature excluded from the definitions of "contribution" and "expenditure" "an offer or tender" of a "contribution or expenditure" that has been rejected, returned, or refunded, there is no similar exclusion for "reimbursements," an exclusion that should be thought to have been obvious, if intended. The majority nonetheless intuits from the "reject or return" exception that "contribution" in MCL 169.204(1), "clearly requires . . . a net transfer of value." *Ante* at 17. (Emphasis added.)

19

therefore, may not rely on the § 6(2)(c) exclusion from the definition of an "expenditure." Even if a "public body" is entitled to rely on this exclusion, the majority errs by holding that the school district's administration of the payroll deduction plan falls "within the statutory exception" because the "expenditure" cannot be characterized as "[a]n expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee." As also discussed, I believe that the majority errs by holding that a school district's administration of the payroll deduction plan does not constitute a "contribution." This latter aspect of the majority's opinion warrants brief further discussion.

(a) In circular fashion, the majority holds that the definition of "contribution" encompasses the term "expenditure" and, thus, because the school district's administration of the payroll deduction plan does not constitute an "expenditure," it also cannot be a "contribution." The majority then states that "[t]he only other way that the administration of the system could be a 'contribution' under the MCFA would be if administering the system resulted in a 'transfer of anything of ascertainable monetary value . . . .'" *Ante* at 14. This assertion is erroneous. As discussed earlier, an "in-kind contribution," which is a "contribution . . . other than money," also constitutes a "contribution." MCL 169.209(3). Similarly, MCFA defines as a "contribution" a "payment." MCL 169.204(1). The school district arguably makes a "payment" to the MEA-PAC when it transfers money from participating MEA members to the MEA-PAC. Although in these circumstances the school district only acts as a conduit, a "contribution" made at the direction of another person "shall be regarded as an expenditure or contribution attributable to both persons . . . ." MCL 169.270.

20

(b) The majority further errs by concluding that its interpretation is necessary to avoid absurd results. In discussing whether the administration of the payroll deduction plan constitutes a "transfer of anything of ascertainable monetary value" and thus a "contribution," the majority states:

> There are two competing ways in which to interpret the word "transfer" in the statute. The first way to read the statute would require that any conveyance of value for services provided to a campaign, regardless of whether the services are paid for, would constitute a contribution. The second way to read the statute would require a net conveyance of value in order to be a "transfer of anything of ascertainable monetary value."
>
> We conclude that the statute must be read to require a net conveyance of monetary value, as opposed to a mere exchange of value. Any other interpretation of "contribution" would lead to an absurd result, and statutes must be construed to prevent absurd results. For example, if the statute were to be interpreted in the manner the Secretary of State suggests, then a print shop that sells signage to a campaign in the normal course of business would be making a contribution to the campaign because it has transferred something of monetary value to the campaign, even though the shop has been compensated for the cost of providing the signage. Such an interpretation of "contribution" would defy common sense, and we do not read the statute in this manner. [*Ante* at 15-16 (citations omitted).]

By emphasizing that its interpretation is necessary to avoid "absurd results," the majority itself appears to concede that the more natural interpretation of the law is that asserted by this dissent. Resort to "absurd results" analysis is generally necessary only to avoid an interpretation that would otherwise flow from a statute by the application of traditional principles of interpretation.

In essence, the majority believes that it is necessary to read MCL 169.204(1) as if it referred to a "*net* transfer of anything of ascertainable monetary value," which it does not, in order to avoid the allegedly "absurd result" to which our interpretation of MCL

21

169.204(1) would lead. What is this allegedly "absurd result"? What is this result that is "quite impossible that [the Legislature] could have intended"? *Pub Citizen v United States Dep't of Justice*, 491 US 440, 471; 109 S Ct 2558; 105 L Ed 2d 377 (1989) (Kennedy, J., concurring). What is this result that is "unthinkable" or "bizarre"? *Green v Bock Laundry Machine Co*, 490 US 504, 527; 109 S Ct 1981; 104 L Ed 2d 557 (1989) (Scalia, J., concurring). What is this result that "cannot rationally . . . mean" what it seems to mean? *Id*. at 528.[13] That there be no exchanges of value between a "public body" and a partisan political action committee? That the government not further the partisan interests of a political action committee? That taxpayer resources not be employed to collect, and facilitate, partisan political contributions? While these results may be "absurd" to the majority justices, we do not find these to be "absurd" at all. Once again, the majority seems to equate an "absurd result" with a disagreeable result. *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 84-86; 718 NW2d 784 (2006) (MARKMAN, J., concurring); *Petersen v Magna Corp*, 484 Mich 300, 370; 773 NW2d 564 (2009) (MARKMAN, J., dissenting). Furthermore, the specific "absurd result" alleged here by the majority, that a print shop could not sell signs to a campaign because this would constitute a "contribution," is itself absurd. A print shop is not a "public body" and, therefore, unlike a school district, is not regulated by § 57 of MCFA.

---

[13] Although I continue to abide by an "absurd results" rule-- albeit a vastly different "absurd results" rule than the majority justices-- the two justices who join this dissent do not. See *People v McIntire*, 461 Mich 147, 152-160; 599 NW2d 102 (1999); cf. *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 78-80, 84-86; 718 NW2d 784 (2006) (MARKMAN, J., concurring).

22

(c) The majority also errs when it concludes that MCL 408.477 of the wages and fringe benefits act provides authority for the school district to administer the payroll deduction plan. "[S]chool districts and school officers have only such powers as the statutes expressly or impliedly grant to them." *Jacox v Van Buren Consol Sch Dist Bd of Ed*, 293 Mich 126, 128; 291 NW 247 (1940). "'The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority.'" *Sittler v Mich College of Mining & Tech Bd of Control*, 333 Mich 681, 687; 53 NW2d 681 (1952) (citation omitted). Contrary to the belief of the majority, the authority to administer a payroll deduction plan for a political action committee is not expressly or impliedly granted to schools in any statute.

While MCL 408.477 of the wages and fringe benefits act refers to payroll deductions, it does not authorize school districts to administer payroll deductions *for political action committees*. MCL 408.477(1) provides in full:

> Except for those deductions required or expressly permitted by law or by a collective bargaining agreement, an employer shall not deduct from the wages of an employee, directly or indirectly, any amount including an employee contribution to a separate segregated fund established by a corporation or labor organization under section 55 of the Michigan campaign finance act, Act No. 388 of the Public Acts of 1976, being section 169.255 of the Michigan Compiled Laws, without the full, free, and written consent of the employee, obtained without intimidation or fear of discharge for refusal to permit the deduction.[14]

---

[14] See also MCL 169.255(6).

23

From this statute, the majority summarily concludes that, "under the plain language of MCL 408.477, public bodies have the authority to administer a payroll deduction plan that contributes money to the MEA-PAC if the MEA enters into a collective bargaining agreement that expressly permits the deductions." *Ante* at 18 n 29. Once again, the majority has grossly misinterpreted a statute. MCL 408.477 has absolutely nothing to do with whether a "public body" may administer a payroll deduction plan for the benefit of the MEA-PAC. Rather, the statute describes the approval required for an employer to deduct a portion of an employee's wages and states that in order to deduct wages from an employee, an employer must obtain the employee's voluntary consent. The statute also provides that such consent is not required when the wage deduction is expressly permitted by law or by a collective bargaining agreement. The most that can be discerned from this statute as it pertains to the instant case is that, if the school district is to deduct wages from its employees, it must obtain the employees' voluntary consent unless the deduction is expressly permitted by law or a collective bargaining agreement. However, neither MCL 408.477 nor any other statute provides *authority* for a "public body" to administer a payroll deduction plan that contributes money to a *political action committee*. Therefore, even if the school district's administration of a payroll deduction plan did not constitute a "contribution" or an "expenditure," which it clearly does, in my judgment, the school district still lacks the *authority* to administer such a plan because no statute accords the school district this authority, and the school district only has the authority accorded to it by statute. Indeed, as explained earlier, the Legislature has affirmatively and expressly forbidden a school district, or any other public body, from making a "contribution or expenditure" to a political action committee.

24

## VI.  TREATMENT OF THIS CASE

Particularly striking in its resolution of this case has been the majority's unprecedentedly *dilatory* treatment, followed abruptly by its unprecedentedly *accelerated* treatment.  The Court of Appeals issued its decision on August 28, 2008; this Court entered an order scheduling oral argument on the application for leave to appeal more than eight months later on May 8, 2009; oral arguments were heard six months later on November 5, 2009; and leave to appeal was granted seven months later on June 4, 2010.  When leave to appeal was granted, the majority justified this on the grounds that the Court needed to be informed about the impact of *Citizens United v Fed Election Comm*, 558 US ___; 130 S Ct 876; 175 L Ed 2d 753 (2010), a then-recent United States Supreme Court decision.  *Mich Ed Ass'n v Secretary of State*, 486 Mich 952 (2010).  The three dissenting justices in the instant case, who also dissented from the earlier grant of leave, described the complete lack of relevance of *Citizens*, asserting in pertinent part:

> Unlike *Citizens United*, the issues in this case have nothing to do with corporate free speech, nothing to do with labor union free speech, nothing to do with the Federal Election Campaign Act, nothing to do with Federal Election Commission rules or regulations, and indeed nothing to do with campaign speech or the First Amendment.  In short, it has nothing to do with anything involved in *Citizens United*.  Instead, it involves only whether § 57 of the Michigan Campaign Finance Act bars a school district from administering a payroll deduction plan for a political action committee.

> Indeed, neither party itself has suggested that this case is affected in any way by *Citizens United*, nor sought any opportunity to file a supplemental brief.  Yet suddenly it is necessary that this Court delay resolution of this case for what will be a minimum of seven or eight additional months, on top of the six or seven months that have already passed since oral argument.  I am aware of no previous instance in which this Court has held arguments on an application, taken no action in response to such arguments for more than six months, and then granted

leave to appeal late during that term, ensuring that such case will not be further considered during that term and that a decision will not be forthcoming until, at the earliest, the beginning of the second calendar year, 2011, after arguments were initially heard. This, with regard to a case that may affect the administrative processes of every school district across this state.

This Court has been presented with substantial briefs from each party. Each party has filed an original and supplemental brief, four amicus briefs have been filed, and oral argument has taken place that lasted well beyond the normal time allotted for such argument. We have heard from the Secretary of State, the Attorney General, the Michigan AFL-CIO, the Chamber of Commerce, the Michigan State Employee's Association, and the Mackinac Center, with a supplemental brief filed by the AFL-CIO and two supplemental briefs filed by the Chamber of Commerce. This case involves a straightforward matter of *statutory* interpretation, and no justice has identified to any of the parties at oral argument, or at any later juncture, any aspect of this case that has not been thoroughly addressed.

To grant leave to appeal under these circumstances constitutes an utter waste of judicial resources, imposes an altogether unnecessary expense upon the parties, and unconscionably delays resolution of an important dispute of statewide importance for no proper reason. What accounts for, and justifies, this delay? What is taking place here is an abuse of the judicial process, and the majority owes considerably more explanation for its actions than it has given. [*Id.* at 953 (MARKMAN, J., dissenting).]

The majority now summarily states in is opinion:

We note that because the issues presented in this case can be resolved under Michigan law, we do not opine on the application of United States Supreme Court caselaw. [*Ante* at 6 n 8.][15]

---

[15] Of course, whether "the issues presented in this case can be resolved under Michigan law" is irrelevant to whether United States Supreme Court caselaw interpreting the United States Constitution applies in any given case.

The absence of any conceivable relevance of *Citizens United* underscores our concern that the grant of leave to appeal in this case, following the argument on the application, represented a waste of judicial resources that imposed unnecessary expenses on the parties, while delaying resolution of an important dispute of statewide importance. Indeed, even before we heard oral arguments on the application, the United States Supreme Court specifically upheld Idaho's absolute ban on the administration of payroll deduction plans by public bodies to facilitate employee contributions to political action committees. *Ysursa v Pocatello Ed Ass'n*, 555 US ___; 129 S Ct 1093; 172 L Ed 2d 770 (2009).

MCR 7.302(G)(1), which is now MCR 7.302(H)(1), was amended in 2003 to allow us discretion to order oral argument before deciding whether to grant leave to appeal. This rule created

> an alternative procedure in those cases in which a majority of the Court believes that an error or an injustice will result from a lower court decision, yet in which there is not a sufficiently far-reaching or difficult legal issue to warrant using the Court's limited resources for full oral argument. [See MCR 7.302, 469 Mich cxlvi (MARKMAN, J., concurring).]

Since the inception of this rule, we have directed the clerk of the Court to schedule arguments on whether to grant applications for leave in 280 cases. Of those cases, only 14, including the instant case, resulted in a grant of the application. Of these 14 cases, none involved a delay between argument on the application and the grant of leave approaching that involved in this case. Arguments here, which had already been delayed by more than eight months on the application, were followed by an additional seven-month delay before the application was even granted. Of the other 13 cases that followed

the same double-hearing procedure, not a single one took seven months between the time of arguments on the application and the grant of leave; indeed, in a majority of those cases, the time elapsed was less than one month.

After granting leave to appeal, this Court again heard oral arguments in November of this year, the period for dissenting justices to respond to the majority opinion was then compressed, and the majority has now, in December, issued an opinion in what approaches, if not exceeds, record time for the issuance of a major opinion of this Court. The majority owes the parties and the public an explanation for their treatment of a case whose resolution is so critical to maintaining the integrity of the governmental processes of our state.

## VII. CONCLUSION

Section 57 prohibits a "public body" from using public resources to make a "contribution or expenditure" for political purposes. The school district's administration of the payroll deduction plan in this case, remitting payments to the MEA-PAC, constitutes both a "contribution" and an "expenditure" as defined by MCFA. The MEA-PAC's offer to reimburse the school district for expenses incurred in its administration of the plan does not remedy an otherwise clear violation of § 57. The majority's contrary interpretation undermines the objectives of the Legislature, which enacted § 57 to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities. The payroll deduction plan in this case is inconsistent with this legislative purpose and inconsistent

28

with the language of the law. Accordingly, I would affirm the judgment of the Court of Appeals.

Stephen J. Markman
Maura D. Corrigan
Robert P. Young, Jr.